**LOVELADIES HARBOR, INC. and Loveladies Harbor, Unit D, Inc., Plaintiffs–Appellees,**

**v.**

**The UNITED STATES, Defendant– Appellant.**

No. 91–5050.

United States Court of Appeals, Federal Circuit.

May 24, 1994.

Kevin J. Coakley, Connell, Foley & Geiser, Roseland, NJ, argued for plaintiffs-appellees. With him on the brief were Stephen D. Kinnard and Ernest W. Schoellkopff.

Robert L. Klarquist, Attorney, Lands & Natural Resources Div., Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Lois J. Schiffer, Acting Asst. Atty. Gen., Environmental & Natural Resources Div., John A. Bryson, Fred Disheroon and Gary S. Guzy.

James S. Burling, Ronald A. Zumbrun and Robin L. Rivett, Pacific Legal Foundation, Sacramento, CA, were on the brief for amicus curiae, Pacific Legal Foundation.

Roland L. Skala, Weeks & Skala, Yakima, WA, was on the brief for amicus curiae, Cascade Development Co., Inc.

Paula K. Smith, Asst. Utah Atty. Gen., and Jan Graham, Utah Atty. Gen., Salt Lake City, UT, and Cheri Jacobus, Chief Asst. Atty. Gen., Anchorage, AK, and Charles E. Cole, Alaska Atty. Gen., Juneau, AK, were on the brief for amicus curiae, States of Utah and Alaska.

Virginia S. Albrecht, Albert J. Beveridge, III and David S. Isaacs, Beveridge & Diamond, P.C., Washington, DC, and Mary V. DiCrescenzo, Nat. Ass'n of Home Buildings, Washington, DC, were on the brief for amicus curiae, Nat. Ass'n of Home Builders.

Richard Dauphinais, Native American Rights Fund, Washington, DC, and Yvonne T. Knight and Patrice Kunesh, Native American Rights Fund, Boulder, CO, were on the brief for amicus curiae, Cheyenne–Arapaho Tribes of Oklahoma.

Charles F. Lettow, Michael R. Lazerwitz and Michael A. Mazzuchi, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, were on the brief for amicus curiae, Dico, Inc.

Thomas H. Shipps, Maynes, Bradford, Shipps & Sheftel, Durango, CO, and Scott B. McElroy and Alice E. Walker, Greene, Meyer & McElroy, P.C., Boulder, CO, were on the brief for amicus curiae, Southern Ute Indian Tribe.

George W. Miller, Walter A. Smith, Jr., Jonathan L. Abram and Jonathan S. Franklin, Hogan & Hartson, Washington, DC, were on the brief for amicus curiae, Whitney Benefits, Inc. and Peter Kiewit Son's Co.

Daniel J. Popeo and Paul D. Kamenar, Washington Legal Foundation, and W. Lawrence Wallace and Carolyn M. White, Vinson & Elkins, Washington, DC, were on the brief for amicus curiae, Washington Legal Foundation, The Allied Educational Foundation, Senator Steve Symms, Senator Conrad Burns and Senator Jesse Helms.

Thomas D. Searchinger, Environmental Defense Fund, New York City, was on the brief for amicus curiae, Environmental Defense Fund.

Before ARCHER, Chief Judge,[*] and RICH, NIES, NEWMAN, MAYER, MICHEL, PLAGER, LOURIE, CLEVENGER, RADER, and SCHALL, Circuit Judges.

PLAGER, Circuit Judge.

This case first came before the court as a regulatory takings case. The United States Government (Government) appealed from the

[*] Judge Archer assumed the position of Chief Judge on March 18, 1994.

merits of a decision of the Court of Federal Claims, which had granted monetary relief to a property owner, Loveladies Harbor, Inc. and Loveladies Harbor, Unit D, Inc. (collectively, Loveladies), as a consequence of the Government's denial of a wetlands development permit. In light of an intervening decision by this court on an unrelated matter, the Government moved to dismiss for lack of jurisdiction. The court has taken the jurisdictional dispute *in banc.* We hold that this court has jurisdiction over the matter. The panel decision on the merits of the dispute will be issued in a separate opinion.

## BACKGROUND

The facts of the case, insofar as they are relevant to the jurisdictional question, may be summarized as follows.[1] Plaintiffs Loveladies own a wetlands tract located on Long Beach Island, Ocean County, New Jersey. Loveladies sought a fill permit, pursuant to § 404 of the Clean Water Act,[2] from the Army Corps of Engineers (Corps). The Corps denied the permit. Loveladies challenged the validity of that permit denial in a proceeding in federal district court under § 554 of the Administrative Procedure Act (APA).[3] The challenge proved unsuccessful.[4]

Loveladies appealed the decision of the trial court to the Court of Appeals for the Third Circuit, which affirmed the judgment for the Government.[5] Loveladies then proceeded with a suit in the Court of Federal Claims which they had filed the year before.[6] (By consent of the parties, prosecution of the suit had been stayed pending the outcome of the district court litigation.) In their Court of Federal Claims suit, Loveladies maintained that the permit denial constituted a taking of private property, and that the Fifth Amendment of the Constitution required the Government to compensate Loveladies. The Court of Federal Claims agreed, and awarded Loveladies compensation of $2,658,000 plus interest.[7] The Government appealed the award to this court.

After a panel of the court heard oral argument in this case, but before an opinion was issued, the full court sitting *in banc* decided *UNR Industries, Inc. v. United States,* 962 F.2d 1013 (Fed.Cir.1992) (*UNR*). That case was taken on certiorari by the Supreme Court and affirmed. *Keene Corp. v. United States,* —— U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (*UNR/Keene*). In *UNR* this court undertook a comprehensive review of the jurisprudence surrounding 28 U.S.C. § 1500, which in pertinent part states:

> The United States [Court of Federal Claims] shall not have jurisdiction of any claims for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

Based on our decision in *UNR,* but prior to the decision of the Supreme Court in *UNR/Keene,* the Government moved in this court to vacate the judgment in favor of Loveladies. The Government in its motion argued that *UNR* compelled the conclusion that, since the suit in the Court of Federal Claims had been filed while the appeal in the earlier district court suit was still pending, § 1500

1. For a full explication of the facts of the case, see the opinions of the trial courts, cited in notes 4 and 7, *infra.*

2. Pub.L. No. 92–500 § 2, 86 Stat. 884 (1972), (amending the Federal Water Pollution Control Act) (codified as amended at 33 U.S.C. § 1344 (1988).

3. Administrative Procedure Àct, Revised Statutes and Statutes at Large, ch. 324 § 5, 60 Stat. 239 (1946), as amended by Pub.L. No. 89–554, 80 Stat. 384 (1966), codified as amended at 5 U.S.C. § 554 (1988).

4. *Loveladies Harbor, Inc. and Loveladies Harbor, Unit D, Inc. v. Baldwin,* Civil No. 82–1948, 20 Env't Rep.Cas. (BNA) 1897 (D.N.J. Apr. 3, 1984).

5. *Loveladies Harbor, Inc. v. Baldwin,* 751 F.2d 376 (3d Cir.1984) (table).

6. *Loveladies Harbor, Inc. and Loveladies Harbor, Unit D, Inc. v. United States,* No. 243–83 L (filed Apr. 14, 1983). Effective October 29, 1992, the Claims Court is known as the United States Court of Federal Claims. Federal Courts Administration Act of 1992, Pub.L. No. 102–572, §§ 804, 902, 106 Stat. 4506, 4516 (1992).

7. *Loveladies Harbor, Inc. v. United States,* 21 Cl. Ct. 153 (1990).

bars the jurisdiction of the Court of Federal Claims over the cause.

In opposition to the Government's motion, Loveladies argued that *UNR* did not compel that conclusion for several reasons, including that the same claims were not involved and that *Casman v. United States,* 135 Ct.Cl. 647 (1956) and like cases, distinguishing claims on the basis of the relief sought, supported jurisdiction.

Because of the importance of the issue, and the fact that other pending cases raise the same issue,[8] this court, sitting *in banc,* by order dated September 28, 1993, called for briefs and subsequently heard oral argument regarding the jurisdiction of the Court of Federal Claims, and by derivation the jurisdiction of this court, over this matter. After considering the briefs and arguments of the parties, and those of the several *amici,*[9] we conclude that the Court of Federal Claims had jurisdiction over the cause, and the appeal on the merits of that court's decision is properly before this court. The Government's motion to dismiss is denied.

## DISCUSSION

### I.

As a preliminary matter, we observe that our decision in *UNR* does not constrain our decision today. Appellants in *UNR,* asbestos manufacturers, filed suit against the United States in the district court seeking money damages based on tort claims. They then filed in the Court of Federal Claims for money damages based on certain contracts they had with the Government. Both suits arose out of the same underlying events. Appellants challenged the longstanding rule that suits involving the same operative facts and seeking the same relief were the same

"claims" for purposes of § 1500, even if based on different legal theories. *See British American Tobacco Co. v. United States,* 89 Ct.Cl. 438 (1939) (*British American* ).

Appellants in *UNR* raised another issue. Appellants' contractual claims had been filed, but not acted upon, when their district court claims were dismissed. Thus, when the Government moved to dismiss their claims in the Court of Federal Claims pursuant to § 1500, appellants had no pending claims. Appellants hence argued that jurisdiction in the Court of Federal Claims was barred only if a claim was pending when the Government moved to dismiss under § 1500. In *UNR,* this court rejected both of appellants' contentions.

The Supreme Court on *certiorari* agreed. In *UNR/Keene,* the Supreme Court held that § 1500 precluded the Court of Federal Claims from exercising jurisdiction over the manufacturers' contract-based claims against the United States, because the manufacturers' tort claims were still pending in district court when suit in the Court of Federal Claims was filed. The question of whether another claim is "pending" for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed, not the time at which the Government moves to dismiss the action.

When this court decided *UNR,* we chose "to revisit the jurisprudence encumbering this statute." *Id.,* 962 F.2d at 1021. In so doing, we declared "overruled" a number of cases, including *Casman. UNR,* 962 F.2d at 1022 n. 3. The Supreme Court took exception to our efforts. "Because the issue is not presented on the facts of this case, we need not decide whether two actions based on the same operative facts, but seeking completely

---

**8.** Without suggesting any view of the merits of the Government's claim in any particular case, we note that similar motions have been filed by the Government in a number of other cases now before the Court of Federal Claims. *See, e.g., Rybachek v. United States,* No. 379–89L; *Whitney Benefits v. United States,* No. 499–83C; and *Cheyenne–Arapaho Tribes of Oklahoma v. United States,* No. 242–87L; *State of Utah v. United States,* No. 91–1428L; *State of Alaska v. United States,* No. 92–314L. In addition, the Court of Federal Claims has granted a number of such motions, which are now before this court on

appeal. *See Southern Ute Indian Tribe v. United States,* No. 93–5019; *Dico, Inc. v. United States,* No. 93–5124; *Cascade Development Co., Inc., v. United States,* No. 83–5087.

**9.** Briefs *amicus curiae* were filed by: Cascade Development Company; Cheyenne–Arapaho Tribes of Oklahoma; Dico, Inc.; National Association of Home Builders; Pacific Legal Foundation; Southern Ute Indian Tribe; the States of Utah and Alaska; and Whitney Benefits, Inc.

different relief, would implicate § 1500."
*UNR/Keene,* —— U.S. at —— n. 6, 113 S.Ct.
at 2043 n. 6 (citing *Casman* and a similar
case, *Boston Five Cents Savings Bank, FSB
v. United States,* 864 F.2d 137 (Fed.Cir.1988)
(*Boston Five* )). At a later point in its *UNR/
Keene* opinion the Supreme Court said: "In
applying § 1500 to the facts of this case, we
find it unnecessary to consider, much less
repudiate, the 'judicially created exceptions'
to § 1500 found in *Tecon Engineers, Cas-
man,* and *Boston Five.*" *UNR/Keene,* ——
U.S. at ——, 113 S.Ct. at 2044 (quoting from
and citing to this court's *UNR* opinion.) [10]

■ As the Supreme Court has reminded
us, anything we said in *UNR* regarding the
legal import of cases whose factual bases
were not properly before us was mere *dic-
tum,* and therefore we will not accord it
*stare decisis* effect. The Government can
draw no comfort in this case from the holding
of *UNR,* as affirmed in *UNR/Keene.* The
issue the Government raises, and which is
now properly before us on the facts of this
case, is whether § 1500 denies jurisdiction to
the Court of Federal Claims if, at the time a
complaint for money damages is filed, there
is a pending action in another court that
seeks distinctly different relief. Our prece-
dent, *Casman* and cases like it, tells us the
answer is no. As we are unwilling to give
*stare decisis* effect to a matter that we did
not fully consider and that was not before us
in the prior case, we do not consider today's
case as a 'resurrection' of *Casman* (*see* dis-
sent, *Op.* at 1557), but as an opportunity for
the Government to persuade us why we
should abandon *Casman.*

## II.

The precise issue in this case is the mean-
ing of the term "claims" as it is used in
§ 1500, which states that the Court of Feder-
al Claims shall not have jurisdiction "of *any
claims* for or in respect to which the plaintiff
... has pending in any other court any suit
or process against the United States ..."

(Emphasis added.) Specifically, the question
is whether the "claims" which Loveladies
brought to the Court of Federal Claims are
the same as the "claims" which Loveladies
had already sued upon in the district court.
If the claims are the same, the jurisdiction of
the Court of Federal Claims over the same
claims, still pending before the district court
when the second suit was filed, was barred
by § 1500. If the claims are distinctly differ-
ent, Loveladies are excused from the juris-
dictional dance required by § 1500.

Deciding if the claims are the same or
distinctly different "requires a comparison
between the claims raised in the Court of
Federal Claims and in the other lawsuit."
*UNR/Keene,* —— U.S. at ——, 113 S.Ct. at
2041. It also requires a definition of "claims"
that the statute does not provide. As the
Supreme Court put it, "The exact nature of
the things to be compared is not illuminated,
however, by the awkward formulation of
§ 1500." *Id.*

The legislative history of § 1500 is fairly
straightforward, and was ably recounted in
this court's opinion in *UNR,* 962 F.2d at
1017–19, and more briefly by the Supreme
Court in *UNR/Keene,* —— U.S. at ——, 113
S.Ct. at 2039–40. *See also* David Schwartz,
*Section 1500 of the Judicial Code and Dupli-
cate Suits Against the Government and Its
Agents,* 55 Geo.L.J. 573, 574–80 (1967). Like
the statute, the legislative history does not
teach how to identify claims that are the
same for the purposes of § 1500.

The meaning and scope of the term, then,
has been left to caselaw development. This
court recently reviewed the question in
*Johns–Manville Corp. v. United States,* 855
F.2d 1556 (Fed.Cir.1988), *cert. denied,* 489
U.S. 1066, 109 S.Ct. 1342, 103 L.Ed.2d 811
(1989) (*Johns–Manville* ). We reaffirmed
the rule that it is 'operative facts' and not
legal theories by which claims may be distin-
guished under § 1500 when the same relief—
money damages—is sought.[11] Johns–Man-

---

10. *Tecon Eng'rs, Inc. v. United States,* 343 F.2d 943, 170 Ct.Cl. 389 (1965) held that a later-filed action in another court does not oust the Court of Claims of jurisdiction over an earlier-filed complaint. That situation was not before this court in *UNR.*

11. *See also UNR,* 962 F.2d at 1024, "We decline to disturb either this precedent or Johns–Man-ville." "This precedent" referred to *British American* and *Los Angeles Shipbuilding & Dry-dock Corp. v. United States,* 152 F.Supp. 236, 138 Ct.Cl. 648 (1957).

ville filed indemnification claims in district courts against the Government, based on amounts it had paid for defense and settlement of suits for injuries allegedly due to exposure to asbestos products it had sold to the Government.[12] Jurisdiction in the district court was based on the Federal Tort Claims Act. While these suits were pending, Johns–Manville filed three suits in the Court of Federal Claims seeking indemnification from the Government for essentially the same losses, but this time on claims of breach of implied warranty, duty to reveal superior knowledge, and mutual mistake—all contract based claims.

The Court of Federal Claims dismissed plaintiff's suit pursuant to § 1500. We affirmed, holding that "Claims are the same where they arise from the same operative facts even if the operative facts support different legal theories which cannot all be brought in one court." *Johns–Manville*, 855 F.2d at 1567. The court distinguished the situation before it, one in which the relief sought from both courts is money but under different legal theories, from one in which "a different type of relief is sought in the district court (equitable) from that sought in the Court of Claims (money)." *Id.* at 1566 (citing *Casman*). As the court observed, "the legislative history and the cases indicate section 1500 was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts." *Johns–Manville*, 855 F.2d at 1564.

Viewing claims as related to the nature of the relief sought is unremarkable.[13] And using differing relief as a characteristic for distinguishing claims was especially appropriate here, because the Court of Federal Claims and its predecessors have been courts with limited authority to grant relief. These courts could not grant the kinds of general equitable relief the district courts could, even in cases over which they otherwise have had subject-matter jurisdiction. Although the powers of the Court of Federal Claims have been increased in recent years, so that in some instances it can grant complete relief in cases over which it has subject matter jurisdiction, the Court of Federal Claims remains a court with limited remedial powers.[14]

The *Casman* case cited in *Johns–Manville* arose when a government employee sued in district court for reinstatement to his position with the Government, and while that suit was pending, sued in the Court of Claims for back pay denied him as a result of the allegedly unlawful removal.[15] When the Government moved to dismiss under § 1500 the monetary claim in the Court of Claims, that court denied the motion. The court held that the two suits alleged different "claims"— although the two suits involved the same conflict between the same parties, the claims were distinguished by the different form of relief each sought.[16]

This court and its predecessor, although sometimes referring to the *Casman* rule as an "exception" to § 1500, see, e.g., *Johns–Manville* at 1566, have consistently applied this principle to distinguish claims. *See, e.g. Truckee–Carson Irrigation District v. United States*, 223 Ct.Cl. 684, 1980 WL 13153 (1980); *Boston Five*, 864 F.2d 137 (Fed.Cir.

---

**12.** There were also third-party complaints filed in the Eastern District of Virginia. *Johns–Manville*, 855 F.2d at 1558.

**13.** "What is a claim against the United States is well understood. It is a right to demand money from the United States." *Hobbs v. McLean*, 117 U.S. 567, 575, 6 S.Ct. 870, 873, 29 L.Ed. 940 (1885). *See also* Blacks's Law Dictionary 247 (6th ed. 1990), defining claim as, *inter alia*, a "[d]emand for money or property as of right."

**14.** *See, e.g.,* 28 U.S.C. § 1491(a)(2) (Supp. IV 1992) (granting Court of Federal Claims power to render judgment in nonmonetary disputes arising under the Contract Disputes Act of 1978).

**15.** Under the jurisdictional rules then in effect, the district court could not grant the monetary damages alleged, and the Court of Claims did not have authority to order reinstatement. Now, under 28 U.S.C. § 1491(a)(2) (Supp. IV 1992), the Court of Federal Claims can order reinstatement.

**16.** "The claim in this case and the relief sought in the district court are entirely different. The claim of plaintiff for back pay is one that falls exclusively within the jurisdiction of this court, and there is no other court which plaintiff might elect. On the other hand, the Court of Claims is without jurisdiction to restore plaintiff to his position." *Casman*, 135 Ct.Cl. at 649–50 (citations omitted). The suit in the Court of Claims was allowed to continue.

1988). *See also Deltona Corp. v. United States*, 657 F.2d 1184, 228 Ct.Cl. 476 (1981) (takings claim was filed and prosecuted in Court of Claims during the pendency of a challenge in district court to the validity of the Corps' denial of a dredge and fill permit; the issue of whether jurisdiction was barred by § 1500 was not addressed); *Webb v. United States*, 19 Cl.Ct. 650 (1990) (relief used to distinguish a claim presented to the then Claims Court from a claim in district court).

■ The description of the *Casman* rule as an "exception" to § 1500 is inapt. Courts cannot create exceptions to jurisdictional grants not expressed in the statute. *Corona Coal Co. v. United States*, 263 U.S. 537, 44 S.Ct. 156, 68 L.Ed. 431 (1924). *Casman* and its progeny reflect a carefully considered interpretation of the statutory term "claims," a term undefined in the statute and subject to conflicting views as to its meaning.

Similarly, the "operative facts" rule applied in *Johns–Manville* was an interpretation of the term "claims," and was consistent with the Court of Claims decision in *British American*, which had held that two claims were not necessarily different simply because they were based on different legal theories. In *British American*, the plaintiff, acting under federal regulations and executive orders, surrendered gold bullion to the Federal Reserve Bank of New York. The plaintiff brought suit against the Government in district court under a tort theory, and in the Court of Claims under a contractual theory. In both courts plaintiff sought a money judgment. The Court of Claims held that § 1500 barred the claim before it. It made no difference that the two suits were based upon different legal theories; the plaintiff had only one claim for money based on the same set of facts.

Courts have also long followed the principle of *British American.*[17] *See e.g. Los An-*

*geles Shipbuilding & Drydock Corp. v. United States*, 152 F.Supp. 236, 138 Ct.Cl. 648 (1957); *Hill v. United States*, 8 Cl.Ct. 382 (1985); *Bennally v. United States*, 14 Cl.Ct. 8 (1987); *Johns–Manville*, 855 F.2d 1556 (Fed.Cir.1988); *UNR*, 962 F.2d 1013 (Fed. Cir.1992); *UNR/Keene*, —— U.S. ——, ——, 113 S.Ct. 2035, 2043, 124 L.Ed.2d 118 (1993) ("The decision in *British American Tobacco* strikes us, moreover, as a sensible reading of the statute ...").

■ Thus we have consistently tested claims against both the principle established in *Casman* and that established in *British American*. Taken together, these tests produce a working definition of "claims" for the purpose of applying § 1500. For the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts,* and must seek *the same relief.* We know of no case arising from the same operative facts in which § 1500 has been held to bar jurisdiction over a claim praying for relief distinctly different from that sought in a pending proceeding.[18]

### III.

■ The Government presents several arguments why this case should be dismissed for lack of jurisdiction. The Government argues first that Loveladies' APA challenge to the validity of the permit denial filed in district court, and their suit in the Court of Federal Claims for just compensation under the Fifth Amendment, are in reality one claim, arising from the same operative facts, and that under the law that alone is enough to bar jurisdiction under § 1500. As our precedents establish, and as we explained above, a showing that the two claims arose from the same 'operative facts' is necessary, but not sufficient, to preclude the Court of Federal Claims from hearing a case. To

---

**17.** Despite its lineage, it can be argued that there is a basic epistemological difficulty with the notion of legally operative facts independent of a legal theory. Insofar as a fact is 'operative'—*i.e.,* relevant to a judicially imposed remedy—it is necessarily associated with an underlying legal theory, that is, the cause of action. For example, without legal underpinning, words in a contract are no different from casual correspondence.

Because it is unnecessary for our decision in this case, we need not further refine the meaning of 'operative facts.'

**18.** Our independent search has turned up no such case. At oral argument counsel for both parties were asked if they knew of any such case, and both answered in the negative.

come within the proscription of § 1500, the claims must also seek the same relief. Each of Loveladies' two suits prays for distinctly different relief. The Government's argument that § 1500 precludes the Court of Federal Claims from hearing Loveladies' takings claim on the ground of operative facts alone is, under the law, without merit.[19]

The Government then argues that we should overturn longstanding precedent and adopt new law, a new definition of "claims." The Government argues that it should be enough to preclude the Court of Federal Claims from hearing a claim if another claim, arising from the same operative facts, is pending in another court, regardless of the type of relief sought. Under this theory, if we accept, as we have done *arguendo,* that Loveladies' two suits arise from the same operative facts,[20] then § 1500 denies jurisdiction to the Court of Federal Claims. The Government makes essentially two arguments in support of a new understanding of § 1500.

First, the Government reads *Corona Coal Co. v. United States,* 263 U.S. 537, 44 S.Ct. 156, 68 L.Ed. 431 (1924), to hold "the Supreme Court explicitly rejected the concept that Section 154 [the predecessor of § 1500] should be made subject to a hardship exception." True enough, and irrelevant. In *Corona Coal,* the petitioner argued that even though there was a pending suit in district court seeking the same relief based on the same facts as those in the Court of Claims suit, the statutory bar should not apply because the imminent running of the statute of limitations forced petitioner to file. The Supreme Court responded: "But the words of the statute are plain, with nothing in the context to make their meaning doubtful; no room is left for construction, and we are not at liberty to add an exception in order to remove apparent hardship in particular cases." *Id.* at 540, 44 S.Ct. at 156.

The case before us is not a matter in which a court-created exception to an otherwise plain piece of legislation is at issue. As we

noted earlier, *Casman* did not create an "exception" to the rule of § 1500, any more than *British American* did. In each case, this court or its predecessor was called upon to specify the meaning of an ill-defined and multivalent term, "claims," in a particular factual context. *Casman* and *British American* establish two applicable principles—(i) identity of relief requested, and (ii) identity of operative facts—with which to test the identity of claims. As we have seen, this court has consistently adhered to those principles.

The Government's second argument for adopting its understanding of § 1500 is that, if we do not adopt the Government's view, we will return the law to the confused state it was in before our opinion in *UNR,* the opinion in which, the Government claims, we eliminated much prior case law interpreting § 1500 and thereby rectified the jurisprudence surrounding the statute. There are three problems with this argument. First, as discussed above, our opinion in *UNR* did not make all the supposedly crooked ways surrounding § 1500 straight. The common law does not work like that; that is its genius. *See South Corp. v. United States,* 690 F.2d 1368, 1371 (Fed.Cir.1982) ("resolution of conflict, a major element in this court's mission, requires not a one-shot selection but a careful, considered, cautious, and contemplative approach.").

Second, the Government introduces no evidence of the alleged confusion presumably surrounding § 1500. We have not been shown the existence of a serious shortcoming in the case law causing irremediable difficulty for litigants. The principles of *Casman* and *British American* are not that difficult to comprehend or apply. Third, whatever residue of confusion may exist in the Government's mind on this issue, or in the minds of others, our opinion today should dispel.

The Government finally argues that, even if § 1500 does not bar the jurisdiction of the Court of Federal Claims when different relief

**19.** Question 3 of the court's Order of September 28, 1993, asked in part, "If some but not all of the operative facts are the same, does *Johns–Manville* require that the § 1500 bar apply?" In

view of our disposition of the case, that question is not before us for decision.

**20.** *See* note 17 *supra.*

is sought, Loveladies in fact was not seeking relief different from that sought in the district court. The Government bases this argument on a comparison of the complaints filed in those courts. The pleadings are in some respects similar (apparently parts were copied one from the other), and both ask the court to "declare" certain conclusions. Therefore, argues the Government, this case is different from *Casman* in that Loveladies sought the same declaratory relief in both courts. The dissent agrees with the Government. We do not.

The district court complaint alleges jurisdiction under both the Fifth Amendment and the Commerce Clause of the Constitution, and under § 404 of the Federal Water Pollution Control Act of 1972 (33 U.S.C. § 1344), the Administrative Procedure Act (5 U.S.C. § 554), and the general grant to the district courts of jurisdiction over federal questions, 28 U.S.C. § 1331. After reciting allegations as to all counts, the complaint sets forth eight numbered counts. The gravamen of the First Count is the allegation that "defendant has violated the Fifth Amendment to the United States Constitution by taking plaintiffs' private property for public use without compensation." The remaining counts allege various wrongs in the regulatory authority and practices of the Corps as they relate to the Loveladies case. The complaint closes with a prayer that asks the court for relief, including:

2. Declaring that the action of the defendant in denying the permit application of plaintiffs constitutes a taking of property in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution;

. . . .

4. Declaring that the regulations relied upon . . . are unconstitutional [as beyond the scope of the Commerce Clause];

. . . .

5. Declaring that the regulations relied upon . . . are *ultra vires* . . .

and concludes with the usual "granting such other relief . . ." prayer.

The complaint in the Court of Claims is similar, but shorter. The jurisdictional allegations are limited to the Fifth Amendment, and to § 404 of the Federal Water Pollution Control Act[21] and 28 U.S.C. § 1494, the Tucker Act. There are only two counts. The first is a repeat, somewhat expanded, of the first count of the district court complaint. The second count repeats some of the allegations about the arbitrary nature of the Corps' decision. The prayer again, *inter alia,* includes a request for relief that the court declare that the action of the defendant in denying the permit application of plaintiffs constitutes a taking of property in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution.

It is important to note that the prayer in the Court of Claims complaint contained an express request for damages. Significantly, that request was missing from the complaint in the district court. Furthermore, despite asking that the court 'declare' relief, neither complaint, in the jurisdictional allegations or elsewhere, refers or cites to the Declaratory Judgment Act, 28 U.S.C. § 2201. Nor has the Government pointed to anything that suggests the proceedings were conducted under that Act, or in accordance with the rules that govern such proceedings.[22] In each suit, the full relief requested could have been granted by, in the case of the district court suit, a mandatory injunction, and in the case of the Court of Federal Claims suit, a decree for money damages, without either court "declaring" anything. The use of the term "declaring" in the prayers for relief was clearly intended to convey a request different from a formal declaration under the Declaratory Judgment Act.

■ The Government further argues that the presence of an allegation of a taking in the two complaints means that the claims in the district court suit were the same claims as those in the Court of Federal Claims suit, since Loveladies sought in the district court a

---

21. Both the district court and Court of Claims complaints contain the same typographical error—they refer to the Federal Water Pollution *Contract* Act.

22. *See* Fed.R.Civ.P. 57.

declaration of taking and thus implicitly the monetary relief that would accompany the declaration.[23] But the Government itself destroyed the core of that argument in its answer to that complaint. In the district court, the Government stated as its First Separate Defense: "This Court lacks subject matter jurisdiction over the Complaint's allegations of a taking of property." The district court agreed with the Government's view that Count I was without legal significance as far as a taking and compensation under the Fifth Amendment were concerned. While granting judgment in favor of the Government on all other counts, that court dismissed Count I without prejudice to the rights of plaintiffs to pursue the takings allegations in the Court of Federal Claims.[24] The prayer for a "declaration" of a taking, for which the First Count was the predicate, thus was equally without legal significance.

■ By contrast, in the complaint in the Court of Federal Claims Loveladies clearly ·alleged that a taking had occurred, and that just compensation was due them. As we have often noted, the Tucker Act, which was cited by Loveladies as their jurisdictional base, provides jurisdiction for damage suits against the United States Government, but a recovery against the Government requires a substantive right created by some money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States. *See, e.g., United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*in banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984). That Loveladies sought a clear finding or "declaration" of their rights under the Fifth Amendment as the money-

mandating source of their entitlement to recovery seems hardly surprising.

In sum, reading the two complaints in light of the legal and factual circumstances in which they were drawn leaves little doubt what was intended by the prayers for relief contained in them. At the time Loveladies filed their complaint in the district court seeking invalidation of the Government's action, they may not have foreseen the possible complications that might arise if they later sought monetary relief in the Court of Federal Claims. If they had, perhaps they might have framed their pleadings with more precision. Be that as it may, the claims in the two courts are for distinctly different and not the same or even overlapping relief—this case presents the straightforward issue of plaintiffs "who seek distinctly different types of relief in the two courts." *UNR/Keene,* —— U.S. at ——————, 113 S.Ct. at 2044-45.[25]

### IV.

The result we reach on the Government's motion is further supported by the Supreme Court's decision in *Pennsylvania Railroad Co. v. United States,* 363 U.S. 202, 80 S.Ct. 1131, 4 L.Ed.2d 1165 (1960). In that case the Supreme Court confronted the basic issue here: the interplay of two legally recognized and protected rights, which, because of the statutory jurisdictional structure, are thrown into apparent conflict. The problem arose there, as it does here, when a federal government agency exercised its regulatory power in a manner that raises questions both of the validity of the exercise and, if valid, the economic consequences of the exercise.

In *Pennsylvania Railroad,* war conditions had prevented the Government's planned ex-

---

**23.** We note in passing that the allegations of a taking, found in both complaints, could . be viewed as reflecting the legal theory assumed to underlie the factual allegations. Since differing legal theories do not define differing claims under § 1500, there seems no logical reason to suppose that overlapping legal theories (*see* dissent, *Op.* at 1559) necessarily define the same claims.

**24.** The Government, as well as Loveladies, consented to the dismissal.

**25.** The dissent invokes the overruling of *Brown v. United States,* 358 F.2d 1002, 175 Ct.Cl. 343

(1966), by this court in *UNR* and the Supreme Court's agreement in *UNR/Keene* as somehow relevant to the overlapping relief issue. But *Brown* was a case in which, despite § 1500, the Court of Claims had allowed a suit to proceed that was filed in that court while a district court action seeking the same relief was pending. The reasoning in *Brown* was in direct conflict with this court's and the Supreme Court's view of § 1500 as applied to such cases, and obviously was not good law. The facts of *Brown* remove it from any application to the issues in this case.

portation of certain raw materials to Great Britain. The Pennsylvania Railroad charged the Government the higher 'domestic' rate for transport of the materials (the railroad charged less for transport of goods for export). The Government paid the higher domestic rate, but then set-off the amount of the price difference from other obligations it owed to the railroad. The railroad brought suit in the Court of Claims to recover the amount so deducted. *Id.* at 203, 80 S.Ct. at 1132.

█ The Court of Claims proceedings initially were suspended while the railroad and the Government disputed before the Interstate Commerce Commission (ICC) the correctness under governing regulations of the rates, an issue which was under ICC jurisdiction. The railroad disagreed with part of the ICC's determination, and appealed to the District Court as the statute provided, seeking to set aside the ICC order. Plaintiff railroad requested that the Court of Claims continue to stay its proceedings pending the District Court ruling on the validity of the ICC determination. The Court of Claims declined to do so. *Id.* at 203–04, 80 S.Ct. at 1132–33.[26]

The Supreme Court held that this was error:

> [J]urisdiction [to review the ICC determination] is vested exclusively in the District Courts.... It necessarily follows, of course, that since the Railroad *had a right to have the Commission's order reviewed,* and only the District Court had the jurisdiction to review it, *the Court of Claims was under a duty to stay its proceedings pending this review.*

*Id.* at 205–06, 80 S.Ct. at 1133 (emphasis added).

The plaintiff in *Pennsylvania Railroad* had a right to have the Commission's order reviewed because it determined certain rights and obligations which had significant legal consequences for its dispute with the Government. Plaintiffs such as Loveladies, too, have a right to have the Corps' permit denial reviewed, without being placed in the position of having to give up a substantial legal right protected by the Takings Clause of the Constitution. *See also Aulston v. United States,* 823 F.2d 510, 514 (Fed.Cir. 1987) (Claims Court ordered to "hold appellants' taking claim on its docket in suspension for such time as is reasonably necessary for appellants to challenge the [agency] decision in a district court, and if successful there, to return promptly to the Claims Court.").

The plaintiff in *Pennsylvania Railroad,* after filing in the Claims Court, was confronted with the necessity of litigating the regulatory issue in another court. In the case before us, plaintiffs filed the APA action in the district court first, and then filed the takings claim in the Court of Federal Claims. In a takings case this is entirely logical—if the validity of the regulatory imposition is to be challenged, it makes sense to pursue the validity question first so as to determine the necessity for prosecuting the takings claim. The risk of course is that too long a time may be required for initiation of a suit, discovery and other pretrial activities, and decisions at both trial and appellate levels. It may not always be possible because of the statute of limitations for a plaintiff to wait for the regulatory challenge case to be finally concluded before filing in the Court of Federal Claims.[27]

Litigation can serve public interests as well as the particular interests of the parties. The nation is served by private litigation which accomplishes public ends, for example, by checking the power of the Government through suits brought under the APA or under the takings clause of the Fifth Amendment. Because this nation relies in signifi-

---

**26.** The Government sought also to dismiss the Court of Claims action, citing § 1500. The Court of Claims denied the motion, and the Supreme Court specifically noted that the issue was not challenged on appeal. *Id.* 363 U.S. at 204, 80 S.Ct. at 1132. If jurisdiction as defined by § 1500 were at issue, the Supreme Court's indifference to the question of its jurisdiction would be puzzling since it is a basic principle that courts must attend to their jurisdiction even if the parties do not. *Louisville & Nat'l R.R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908); *UNR,* 962 F.2d at 1022.

**27.** 28 U.S.C. § 2501 (Supp. IV 1992) sets the bar at 6 years.

cant degree on litigation to control the excesses to which Government may from time to time be prone, it would not be sound policy to force plaintiffs to forego monetary claims in order to challenge the validity of Government action, or to preclude challenges to the validity of Government action in order to protect a Constitutional claim for compensation. Section 1500 was enacted to preclude duplicate cotton claims—claims for money damages—at a time when *res judicata* principles did not provide the Government with protection against such "duplicative lawsuits." *UNR/Keene*, —— U.S. at ——, 113 S.Ct. at 2039. Whatever viability remains in § 1500, absent a clear expression of Congressional intent we ought not extend the statute to allow the Government to foreclose nonduplicative suits, and to deny remedies the Constitution and statutes otherwise provide.

## CONCLUSION

The motion of the Government that the judgment of the Court of Federal Claims be vacated and the complaint dismissed is denied. The case is returned to the panel for decision on the merits.

### *MOTION DENIED.*

MAYER, Circuit Judge, with whom NIES * and RADER, Circuit Judges, join, dissenting.

Because I see no reason to reconsider our recent in banc decision in *UNR v. United States*, 962 F.2d 1013 (Fed.Cir.1992), *aff'd sub nom. Keene Corp. v. United States*, 508 U.S. ——, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993), I dissent.

### I.

A court is free to reverse itself when it sits in banc, of course, but "any departure from the doctrine of *stare decisis* demands special justification," which is missing from today's undertaking. *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989) (citation omit-

ted). This is especially so "in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and Congress remains free to alter what we have done." *Id.*

This case revolves around the authority of the Court of Federal Claims to hear petitioners who have a suit against the government relating to the same claims pending in another court. 28 U.S.C. § 1500 (Supp. IV 1992).[1] Like all federal courts, the Court of Federal Claims has limited jurisdiction, with a range of authority extending only so far as Congress, by statute, permits; the statutes that define the court's jurisdiction must be strictly construed. *Keene*, —— U.S. at ——, 113 S.Ct. at 2040. Though this may work injustice in a particular case, we cannot, in the interest of justice or equity, presume to expand jurisdiction beyond these narrow bounds. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

In *UNR* we addressed the meaning of "claim" under section 1500. 962 F.2d at 1023. The claims heard by the Court of Federal Claims generally involve requests for monetary relief. But it does not follow that only suits brought in other courts for money damages can give rise to section 1500's jurisdictional bar. Section 1500 divests the Court of Federal Claims of jurisdiction over such a claim where the plaintiff has a suit for the claim pending in another court or where the one in the Court of Federal Claims relates to—is "in respect to"—another suit. The jurisdictional question raised by section 1500 is thus not simply whether the claims are the "same," but whether they are sufficiently related to invoke the bar. In *UNR*, the in banc court reaffirmed that the answer lies in a comparison of the operative facts from which the suits arise. "[C]orrectly construed, section 1500 applies to all claims on whatever theories that 'arise from the same operative facts.'" 962 F.2d at 1023 (citation omitted).

---

* Circuit Judge Nies vacated the position of Chief Judge on March 17, 1994.

**1.** The United States Court of Federal Claims shall not have jurisdiction of any claims for or

in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....
*Id.*

*UNR* was "a comprehensive effort to set out the proper interpretation of a jurisdictional statute, a matter that does not require a pointed dispute between parties. Courts are obliged to resolve jurisdictional questions on their own even if parties do not raise them. In the course of this interpretive effort, if prior cases are seen as inconsistent, it is incumbent on the court to acknowledge their nonviability." 962 F.2d at 1023. At issue were the indemnification claims of corporations who manufactured and supplied asbestos products in the course of contract work for the government. When workers filed personal injury suits against the corporations arising from exposure to their products, the defendants sought indemnification from the government in district court, alleging tort theories, and in the Court of Federal Claims on contractual theories.

We confirmed the trial court's dismissal of the claims, holding that section 1500 applied regardless of which action was first filed, and that "claim", as it appears in the statute, refers not to the legal theory of the suit but to the operative facts supporting the petitioners' various actions. Thus, we held that the petitioners' claims in the Court of Federal Claims were claims for or in respect to which they had suits pending in the district court, even though the former were based on contractual theories of recovery and the latter on tort theories, because they arose from the same personal injuries. *Id.* at 1023.

We also considered the exception to this rule set out in *Casman v. United States,* 135 Ct.Cl. 647 (1956), which excused adherence to section 1500 where the claims in question seek different forms of relief. We all knew a factual predicate for a *Casman* exception was not before us in *UNR,* but during the course of our consideration of the statute, it was plain that we could not square that and like cases with the clear meaning of the jurisdictional statute. That statute, as a whole, was before us in *UNR;* there is no requirement that a factual predicate underlay every jot

and tittle of it before a court can explain what it means.

The history of section 1500 is replete with instances where courts sought to temper perceived inequity by inventing exceptions to the rule. *See* 962 F.2d at 1020. In *Casman,* the injustice was thought to arise because no court was able to simultaneously grant complete relief to the petitioner: he sought restoration to his position, available only in the district court, and back pay, which he could only recover in the Court of Claims. *Casman* held section 1500 inapplicable because it was thought unfair to force the plaintiff to choose between the two courts. 135 Ct.Cl. at 650.

But it is axiomatic that courts cannot extend their jurisdiction in the interest of equity. *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2178. Faced with a jurisdictional statute riddled with judicially created loopholes, in *UNR* we concluded that section 1500 should be applied according to its plain words, and that instrumental to such application was a single, coherent definition of the word "claim" as referring only to the facts underlying the petitioner's action against the government. This construction is consistent with precedent stretching back sixty years or more. *UNR,* 962 F.2d at 1023; *Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1563 (Fed.Cir.1988); *British American Tobacco Co. v. United States,* 89 Ct.Cl. 438, 440 (1939).[2] We overruled *Casman* because it was in conflict with this interpretation.

The Supreme Court agreed that "the comparison of the two cases for purposes of possible dismissal would turn on whether the plaintiff's other suit was based on substantially the same operative facts as the Court of Claims action, at least if there was some overlap in the relief requested." —— U.S. at ——, 113 S.Ct. at 2042. Finding that the *Casman* exception was not implicated by the facts of the case before it, the Court chose not to decide whether two actions seeking different relief would require dismissal under

---

**2.** The court tells us that we have always applied section 1500 pursuant to a two pronged test, operative facts and relief requested. But there is no evidence of this before the *Casman* departure in 1956, a period of some 88 years after the

statute was enacted. We did not notice this phenomenon in our *UNR* exercise, and the Supreme Court apparently missed it in *Keene,* as well. *See* —— U.S. at ——, 113 S.Ct. at 2043.

the statute. *Id.* —— U.S. at —— n. 6, 113 S.Ct. at 2043 n. 6. The Court said nothing by way of disapproval of our ruling on *Casman.* But nine of the ten judges hearing that case here said that *Casman* was unsound and inconsistent with section 1500. One wonders why six of them now think otherwise.

Be that as it may, now, only one year later, the court resurrects *Casman,* scrambling once more down the path of judicial revision of the statute. Normally, "[i]n cases where statutory precedents have been overruled, the primary reason for the Court's shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress." *Patterson,* 491 U.S. at 173, 109 S.Ct. at 2370. To my knowledge, no laws have changed in the short time since we decided *UNR.* Departing from *stare decisis* demands more than cursory distinctions—at the very least, one would expect reversal of our so recent in banc precedent to be supported by some compelling reason.

"[A] traditional justification for overruling a prior case is that a precedent may be a positive detriment to coherence and consistency in the law...." *Id.* This was the justification which supported the overruling of *Casman* in *UNR.* We said there that section 1500, which had become a judicial embarrassment, a monument to cynicism, "is now so riddled with unsupportable loopholes that it has lost its predictability and people cannot rely on it to order their affairs." 962 F.2d at 1021. In fact, only the other day we unanimously agreed that "fail[ure] to adhere to a statutory mandate over an extended period of time does not justify ... continuing to do so." *In re Donaldson,* 16 F.3d 1189, 1194 (Fed.Cir.1994) (in banc).

I agree that plaintiffs should have access to the full range of remedies which the Constitution and statutes provide, especially in light of the important public interest in controlling government excesses. Indeed, the claims of these property owners might well be valid on the merits, if only it were appropriate to reach them. When the government takes private property it must pay just compensation. But Congress set out just how such plaintiffs may bring their suits; we have no right to second guess in the absence of congressional transgression of the Constitution.

It cannot seriously be doubted that Congress has the power to order that the government need not defend claims arising from the same operative facts simultaneously in several forums. That a commonly based suit is pending in the district court does not necessarily forever divest the Court of Federal Claims of jurisdiction over a claim; section 1500 decrees only that a party cannot maintain actions in both courts at the same time. It may sometimes happen that the district court challenge is not finished within six years, after which any Court of Federal Claims action would be barred. *See* 28 U.S.C. § 2501 (1988 & Supp. IV 1992). But statutes limiting courts' jurisdiction will always work injustice in particular cases. *Christianson,* 486 U.S. at 818, 108 S.Ct. at 2178. *See also Keene,* —— U.S. at ——, 113 S.Ct. at 2045. This is not such a case, however, for Loveladies' district court action, including its appeal to the Court of Appeals for the Third Circuit, was resolved within three years. *See Loveladies Harbor, Inc. v. Baldwin,* Civ. No. 82–1948 (D.N.J. March 12, 1984), *aff'd,* 751 F.2d 376 (3d Cir.1984). Loveladies still would have had three years in which to file its claim in the Court of Federal Claims for compensation after the resolution of its challenge to the permit denial.

As we said in *UNR,* "[i]t may have seemed unfair 'to deprive plaintiffs of the only forum they [had] in which to test their demand,' but that does not justify rewriting the statute." 962 F.2d at 1022 (citation omitted). "Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute. Once the meaning of an enactment is discerned and its constitutionality determined, the judicial process comes to an end." *TVA v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978).[3] In *Keene,* the Supreme Court

---

**3.** In words worthy of our consideration, the

Court continued: "The lines ascribed to Sir

suggested that efforts to reform section 1500 should be addressed to Congress. —— U.S. at ——, 113 S.Ct. at 2045. That was the point of *UNR*, and I still think so. In fact, a bill to do just that has been introduced. S. 1355, 103d Cong., 1st Sess. (1993).

## II.

Finally, the court's resurrection of *Casman* is not even supported by the facts of this case. The government argues that in both the district court and the Court of Federal Claims the complaints sought relief "[d]eclaring that the action of the defendant in denying the permit application of plaintiffs constitutes a taking of property in violation of plaintiffs' rights under the Fifth Amendment of the United States Constitution." This is sufficient overlapping relief to make the question one of operative facts alone, even under this court's imaginative reading of *Keene*. *See* —— U.S. at ——, 113 S.Ct. at 2043 (relying on operative facts when there is "some overlap in the relief requested").

The court elides this argument by saying that we should ignore the words of the complaints—language expressly requesting a declaration of a taking—and substitute instead its understanding of what Loveladies must have intended by the several suits. It concludes that Loveladies did not seek overlapping relief because it must not have intended to request a "formal" declaration under the Declaratory Judgment Act, 28 U.S.C. § 2201 (1988). For support, the court notes that Loveladies also requested damages in the Court of Federal Claims, while it requested none from the district court. It then cites the absence of any express reference to the Declaratory Judgment Act, and the lack of any evidence that the proceedings were conducted according to the rules governing proceedings under that act. Finally, the

court points out that Loveladies had adequate remedies in both the district court and the Court of Federal Claims without either court declaring anything. From this, it supposes that Loveladies could not really have been requesting declaratory relief at all.

But declaratory relief is not some special, exclusive remedy; it is an additional form of relief, readily available even when it would be cumulative of other requested relief. 28 U.S.C. § 2201 (allowing declaration of rights "whether or not further relief is or could be sought"); Fed.R.Civ.P. 57 ("The existence of another adequate remedy does not preclude a judgment for declaratory relief. . . ."). It is simply irrelevant that Loveladies asked for monetary relief in one forum and not in the other, and that either court could grant adequate relief aside from any declaration.

Nor is it surprising that Loveladies did not rely on the Declaratory Judgment Act as a basis for jurisdiction, since that act is not an independent source of federal jurisdiction. *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671, 70 S.Ct. 876, 878, 94 L.Ed. 1194 (1950); *Speedco, Inc. v. Estes*, 853 F.2d 909, 911 (Fed.Cir.1988). Indeed, there is no special set of procedures governing declaratory judgment actions; they are controlled by the Federal Rules of Civil Procedure. Fed.R.Civ.P. 57. Under those rules, Loveladies needed only to state facts adequate to support its request for relief; no ritualistic citation to the Declaratory Judgment Act was necessary.

That said, the court's position reduces to a decision to ignore Loveladies' request for overlapping relief because it resulted from imprecise pleading, a mere oversight that we should excuse since the district court had no jurisdiction to address the takings allegation. But it makes no difference under section

---

Thomas More by Robert Bolt are not without relevance here:

> The law, Roper, the law. I know what's legal, not what's right. And I'll stick to what's legal. . . . I'm *not* God. The currents and eddies of right and wrong, which you find such plain-sailing, I can't navigate, I'm no voyager. But in the thickets of the law, oh there I'm a forester. . . . What would you do? Cut a great road through the law to get after the Devil? . . . And when the last law was down, and the

Devil turned round on you—where would you hide, Roper, the laws being flat? . . . This country's planted thick with laws from coast to coast—Man's laws, not God's—and if you cut them down . . . d'you really think you could stand upright in the winds that would blow them? . . . Yes, I'd give the Devil benefit of law, for my own safety's sake."

437 U.S. at 195, 98 S.Ct. at 2302 (quoting R. Bolt, A Man for All Seasons, Act I, p. 147 (Three Plays, Heinemann ed. 1967)).

**1560**

1500 whether there is subject matter jurisdiction in the district court, or not. *See Frantz Equipment Co. v. United States*, 98 F.Supp. 579, 580, 120 Ct.Cl. 312 (1951) ("The applicability of Sec. 1500 to the first claim of plaintiff, asserted in its petition herein, is not conditioned upon the question of whether the District Court had jurisdiction of the claim asserted by the plaintiff therein. . . ."). All that matters even under the court's new rule is that Loveladies had a suit pending in the district court seeking relief overlapping that requested in the Court of Federal Claims. That the district court ultimately dismissed the first count is irrelevant; it was pending when Loveladies filed suit in the Court of Federal Claims, so section 1500 applies.

The result of the court's machinations is to revive *Brown v. United States*, 358 F.2d 1002, 1005, 175 Ct.Cl. 343 (1966), which said, "Section 1500 was not intended to compel claimants to elect, at their peril, between prosecuting their claim in this court (with conceded jurisdiction, aside from Section 1500) and in another tribunal which is without jurisdiction." But we overruled *Brown* in *UNR*, 962 F.2d at 1022, and in *Keene* the Supreme Court expressly agreed, —— U.S. at —— & n. 12, 113 S.Ct. at 2045 & n. 12.