**WEBB & ASSOCIATES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 412–89 L.

United States Claims Court.

Feb. 28, 1990.

Mark V. Clark, Marietta, Ga., for plaintiff.

George Sherk, Washington, D.C., with whom was Richard B. Stewart, Asst. Atty. Gen., for defendant.

## OPINION

RADER, Judge.

This action involves a dispute about the operation and maintenance of a Wherry Military Housing Act (12 U.S.C. § 1748 (1988)) (Wherry Act) project at Fort Gillem, Georgia. Webb and Associates (plaintiff or Webb) is assignee of a leasehold interest in the housing project. Plaintiff contends in this action that the United States Army (the Army) wrongfully refused to consider rent increases at the housing project.

In 1980, the Army filed an action against plaintiff and the assignor, Jon Holden Adams. In this pending federal district court action, the Army contends that plaintiff has not made required repairs and renovations to the housing complex. *See United States v. Jon Holden Adams*, C80–2049A (N.D.Ga. filed Nov. 25, 1980) (Complaint).[1] The Army contends here and at the district court that plaintiff may not recover rent increases or let the premises.

Plaintiff and Mr. Adams have a counterclaim pending in the district court. In their mandatory counterclaim, plaintiff and Mr. Adams contend that the Army breached the lease agreement by forcing tenants to vacate. The Army also purportedly breached the agreement by refusing to consider rent increases. Mr. Adams and plaintiff seek damages and injunctive relief under the Federal Tort Claims Act, 28 U.S.C. § 2671 (1982), and the fifth amendment to the United States Constitution. The district court, however, has suspended proceedings while the parties attempt to resolve their dispute through a consent decree.

Meantime, plaintiff instituted this action in the United States Claims Court for breach of contract and inverse condemnation. Defendant now moves to dismiss the Claims Court action under 28 U.S.C. § 1500 (1982). Defendant contends that plaintiff's pending counterclaim in the district court raises the same claims as plaintiff's complaint. With respect to plaintiff's contract breach claims, this court grants defendant's motion. With respect to plaintiff's inverse condemnation claim, this court denies defendant's motion.

## FACTS

In 1950, the Army entered into an agreement with Conley Housing Corporation (Conley) for the construction, maintenance, and operation of the Holland Park Housing Project at Fort Gillem, Georgia. The Army intended the housing project to serve as a residential complex for military personnel.

The Army executed the lease with Conley in accordance with the Wherry Act. Under this Act, the armed services may lease Government land to private developers. In exchange, the developers promise to build and operate low-cost housing for military personnel. 12 U.S.C. § 1748(d).

In 1966, Conley assigned its leasehold interest to Jon Holden Adams. Mr. Adams first encountered difficulties with the Government between 1975 and 1980. The Army refused to approve Mr. Adams' request for rent increases until Mr. Adams

---

1. The Government originally filed the district court action against Mr. Adams only. Webb and Associates (plaintiff) did not enter into the district court litigation until it became assignee to Mr. Adams' leasehold interest. As assignee, plaintiff now has a stake in the outcome of the district court case.

completed certain repairs and renovations at the housing project. In the fall of 1980, the Army closed the premises because Mr. Adams had not made necessary repairs and renovations. The Army required existing tenants to vacate.

The United States instituted an action against Mr. Adams in November 1980 in the United States District Court for the Northern District of Georgia. The Army sought termination of the agreement with Adams because he purportedly "breach[ed] ... lease conditions to repair and maintain a military housing project in safe and habitable condition...." Complaint, at ¶ 1.

Mr. Adams denied the Army's allegations and filed a counterclaim alleging breach of the lease agreement in violation of the Tort Claims Act and the fifth amendment. Mr. Adams sought damages in excess of $10,-000.00 for diminishing the value of his leasehold interest. Mr. Adams also sought injunctive relief to restore his right to lease the premises.

In August 1981, the United States and Mr. Adams entered into a consent decree that permitted assignment of the leasehold interest to plaintiff. The consent decree required plaintiff to make repairs as defined under the lease. Upon completion of this task, plaintiff could increase the rent as prescribed by the consent decree.

In light of the consent decree, the district court suspended its action. However, Mr. Adams and plaintiff could reinstate the counterclaim if the decree did not resolve the dispute with the United States. The decree, however, provided for dismissal of the counterclaim with prejudice once Webb completed the repairs and renovations.

On February 4, 1987, plaintiff asked the federal district court to vacate or modify the consent decree. Plaintiff contended that it had complied with the decree. Plaintiff alternatively contended that the court should not, in fairness, require any more work.

In December 1987, the district court denied plaintiff's motion. The court ordered the parties to comply with the decree and seek relief only under its terms. The United States Court of Appeals for the Eleventh Circuit affirmed the district court's decision in August 1988. *United States v. Dean Webb, Dean Webb & Assoc.*, 858 F.2d 745 (11th Cir.1988). The parties have continued since then to negotiate, but without successful resolution of the dispute.

Plaintiff filed this action in the Claims Court on July 31, 1989. Plaintiff alleges breach of the lease agreement, breach of the Wherry Act, and inverse condemnation. Defendant moves to dismiss under 28 U.S.C. § 1500 because of the pendency of the earlier district court action.

## DISCUSSION

The United States Claims Court lacks jurisdiction over a complaint that raises claims already pending in another court. 28 U.S.C. § 1500. Section 1500 reads:

> The United States Claims Court shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

Section 1500 prevents duplicative or vexatious litigation by forcing plaintiff to elect between two courts. *See Casman v. United States*, 135 Ct.Cl. 647, 648–49 (1956). The United States Court of Appeals for the Federal Circuit stated:

> [T]he legislative history and the cases indicate section 1500 was enacted for the benefit of the government and was intended to force an election where both forums could grant the same relief, arising from the same operative facts.

*Johns–Manville Corp. v. United States*, 855 F.2d 1556, 1564 (Fed.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1342, 103 L.Ed.2d 811 (1989). The Federal Circuit thus suggests two tests for application of § 1500—(1) whether the potentially conflicting cases arise from the same operative facts, and (2) whether the forums entertaining the cases can grant the same relief.

The Claims Court retains jurisdiction under § 1500 unless plaintiff's complaint involves the same operative facts as a previously filed action pending in another jurisdiction. *Boston Five Cents Sav. Bank, FSB v. United States*, 864 F.2d 137, 139 (Fed.Cir.1988); *British Am. Tobacco v. United States*, 89 Ct.Cl. 438, 440 (1940). A pending counterclaim, as well as a complaint, triggers application of § 1500. *Frantz Equip. Co. v. United States*, 120 Ct.Cl. 312, 98 F.Supp. 579 (1951). Although two actions may depend on different legal theories, the Claims Court may nonetheless dismiss a claim arising from the same operative facts as a claim already pending elsewhere. *Los Angeles Shipbuilding & Drydock v. United States*, 138 Ct.Cl. 648, 152 F.Supp. 236 (1957); *British Am. Tobacco*, 89 Ct.Cl. at 440. The Federal Circuit recently reaffirmed this standard in *Johns–Manville:*

> Both the decision in *British American* and the decision in *Los Angeles* are explicit in their interpretation of the term "claim" in section 1500. Both reject the argument that "claim" is based on legal theories. Both hold "claim" to be defined by the facts.... A contrary interpretation would defeat the intent of Congress and would allow a plaintiff to bring duplicative actions on the same operative facts.... Accordingly, we construe the term "claim" in 28 U.S.C. § 1500 to be defined by the operative facts alleged, not the legal theories raised.

*Johns–Manville*, 855 F.2d at 1562–63.

While the same operative facts test often controls § 1500 motions, the Federal Circuit has articulated a second test. This court must also ask whether the district court presumably can grant the same relief as the Claims Court. As the Federal Circuit remarked, § 1500 will not foreclose Claims Court review unless "both forums could grant the same relief." *Johns–Manville*, 855 F.2d at 1564. Specifically, the court observed that this second test does not require dismissal under § 1500 where the district can grant only injunctive relief and the Claims Court can grant only damages for the identical claim. *Id.* at 1566–67.

A substantial body of Court of Claims precedent supports the Federal Circuit's reading of § 1500. *Gary Aircraft Corp. v. United States*, 226 Ct.Cl. 568 (1981); *Santa Clara v. United States*, 215 Ct.Cl. 890 (1977); *Casman v. United States*, 135 Ct.Cl. 647 (1956). In each of these Court of Claims cases, the court exercised jurisdiction because the other judicial forum lacked authority to award the same relief. If the Court of Claims dismissed these claims, plaintiffs would have had to choose between seeking equitable or monetary relief.

Based on these principles, the Claims Court also retains jurisdiction where plaintiff requests money damages under identical theories in two forums, but only the Claims Court can grant the requested amount of relief. *Boston Five Cents Sav. Bank*, 864 F.2d at 139–40. In *Boston Five Cents*, plaintiff filed identical claims against HUD in the district court and Claims Court for money damages in excess of $10,000.00. On the Government's motion, the Claims Court dismissed its case pursuant to § 1500. The Federal Circuit, however, reversed because the Claims Court had exclusive jurisdiction over plaintiff's request for relief.

The Federal Circuit principally relied on *Hossein v. United States*, 218 Ct.Cl. 727 (1978). In *Hossein*, plaintiff filed identical contract claims in excess of $10,000.00 with both the district court and the Court of Claims. Plaintiff also filed negligence and breach of bailment contract claims in the district court. The Court of Claims denied the Government's motion to dismiss the contract claim:

> [I]t appears that this court would have exclusive jurisdiction over the [implied-in-fact contract] claim because of the amount of damages involved. See 28 U.S.C. § 1346(a)(2) (1976). For this reason, we think it improper for us to dismiss count I [contract claim] because the plaintiff has the same claim pending in the Federal District Court for the Southern District of New York.

*Hossein*, 218 Ct.Cl. at 729. The fact that plaintiff had a negligence claim against the

Government in district court, based on the same facts, did not foreclose the Court of Claims' jurisdiction.

This second test prevents injustices in the case of pending counterclaims which potentially conflict with a Claims Court case. In the case of a counterclaim, the Government has haled a party into district court. By virtue of Fed.R.Civ.P. 13(a), the party must file all claims related to the underlying action initiated by the Government. If the Little Tucker Act governed the counterclaim, the party could recover only up to $10,000.00. 28 U.S.C. § 1346(a)(2) (1982). Thus, by obeying Fed. R.Civ.P. 13(a), the party would forfeit the chance to assert a claim for full recovery within the exclusive jurisdiction of the Claims Court. Such a situation would legally lodge the party between Scylla and Charybdis with no paddle to escape the crushing consequences.

Permitting such results also would encourage races to the courthouse. By filing claims in district courts, the Government could force plaintiffs to sacrifice entire avenues of relief. The Government could reap a great reward for winning its race to the district court. The Government could eliminate or pare down claims for relief within the exclusive jurisdiction of this court without calling a single witness or writing a single brief. Recognizing these potential anomalies, the Federal Circuit recently reasserted the second test for application of § 1500. *Boston Five Cents,* 864 F.2d at 137, 140. Thus, the Claims Court retains jurisdiction if the district court cannot grant the same relief on the pending claims.

*Same Operative Facts*

With regard to the first test under § 1500, plaintiff's complaint involves the same operative facts as the action before the Federal District Court for the Northern District of Georgia. This case and the counterclaim in federal district court raise the plaintiff's duty to repair and maintain the Holland Park Housing Project. Both actions also directly involve the Army's corresponding obligation to permit plaintiff

to lease the premises at prevailing market rates.

Plaintiff also contends in both forums that the Government breached its agreement by requiring renovations that were not part of the bargain. Plaintiff asserts that the Government diminished the value of its leasehold interest by refusing to consider rent increases until completion of such renovations. While plaintiff couched these allegations in somewhat different legal terms before the federal district court, a difference in legal theories does not affect the outcome of a § 1500 motion.

*Same Relief Available*

■ With regard to the second test, the federal district court in Georgia can grant plaintiff, in part, the same relief as the Claims Court. In pertinent part, plaintiff asked the district court for damages in excess of $10,000.00 for violation of the Tort Claims Act. In this Claims Court action, plaintiff seeks damages exceeding $3,000,000.00 for breach of contract. If the Claims Court dismissed the contract claims, plaintiff still could recover $3,000,000.00 for its claim under the Tort Claims Act. The district court could grant plaintiff the same amount of relief under the Tort Claims Act as the Claims Court could grant under its Tucker Act jurisdiction for breach of contract.

This action partially involves the same set of circumstances that required the Claims Court to dismiss the action before it in *Johns–Manville.* As the Federal Circuit remarked, § 1500 requires plaintiff to elect between filing a tort claim in the district court or a contract claim in the Claims Court:

In the instant appeal both tort and contract theories cannot be brought in one court, since the district courts have exclusive jurisdiction of tort actions against the United States and the Claims Court has exclusive jurisdiction of contract actions exceeding $10,000.... However, the legislative history and the cases indicate section 1500 was enacted for the benefit of the government and was intended to force an election where both

forums could grant the same relief, arising from the same operative facts. *Johns Manville*, 855 F.2d at 1564. Thus, plaintiff's contract and Wherry Act claims before this court meets the second test for dismissal under § 1500.

■ Plaintiff, however, also lodged fifth amendment taking claims in both the district court and Claims Court. This set of circumstances falls within the second test for application of § 1500 carved out by the Court of Claims and Federal Circuit. Because of the compulsory counterclaim rule, Fed.R.Civ.P. 13(a), plaintiff filed an eminent domain counterclaim in district court. Plaintiff later filed the same claim in this court. Both claims ask for damages in excess of $10,000.00. 28 U.S.C. § 1346(a)(2). If the district court dismissed the Tort Claims Act, but granted relief on the eminent domain claim, plaintiff could recover only $10,000.00 of what might be a multi-million dollar claim.

This set of circumstances is strikingly similar to the facts in *Hossein*. In *Hossein*, plaintiff filed contract and negligence claims against the Government in district court as well as a contract claim in the Court of Claims. The contract claim exceeded $10,000.00 and the district court therefore could not grant full relief. Thus, if the Court of Claims had dismissed the contract claim and the district court had denied relief on the negligence claim but granted relief on the contract claim, plaintiff would have received less than full recovery. The Court of Claims' decision to retain jurisdiction avoided this result.

Unlike *Hossein*, however, plaintiff in the case at bar finds itself in this situation through no choice or fault of its own. The Army initiated the suit against Webb in Georgia. In the Georgia district court, the compulsory counterclaim rule required Webb to apprise the district court of its eminent domain action against the Army. Fed.R.Civ.P. 13(a). In the district court, however, this claim could not exceed the jurisdictional limit of $10,000.00. 28 U.S.C. § 1346(a)(2) (1982). Because the Army first sued Webb in a district court, the operation of the compulsory counterclaim rule and the Little Tucker Act barred Webb's full relief for a taking.

To avoid precisely this result, the Federal Circuit and the Court of Claims forged the second test for application of § 1500. Thus, the Claims Court retains jurisdiction over plaintiff's eminent domain cause of action. The Federal Circuit held in *Boston Five Cents* that such a result is consistent with its ruling in *Johns–Manville*, 864 F.2d at 139–140.

This court understands defendant's concern that retaining jurisdiction raises the possibility of double recovery by plaintiff. The court can avoid this inequitable result, however, in two ways. First, the court can suspend proceedings and take no further action until resolution of the district court litigation.[2] Second, if plaintiff obtains tort relief or receives an opportunity to litigate fully its tort claim in district court, this court can dismiss the eminent domain claim at that time.

*Subsequent Proceedings Before this Court*

While this court may adjudicate plaintiff's eminent domain claim, it is reluctant to conduct litigation that could forestall the district court from efficiently pursuing its action. The district court has issued a consent decree and subsequently instructed the parties to resolve their dispute in accordance with the terms of this decree. A

---

**2.** This course is consistent with the Court of Claims' decision in *Brown v. United States*, 358 F.2d 1002, 175 Ct.Cl. 343 (1966). In *Brown,* the court initially dismissed plaintiff's claim without prejudice under § 1500 because plaintiff had the same claim pending in the district court. The district court later dismissed the claim, however, because it was within the exclusive jurisdiction of the Court of Claims. Thereafter, the Court of Claims reinstated the claim on the grounds that the claim before the district court was no longer pending. *Accord, Frantz Equip. Co. v. United States*, 120 Ct.Cl. 312, 314, 98 F.Supp. 579 (1951).

By suspending proceedings in this case, this court similarly will refrain from exercising its jurisdiction until the district court disposes of the action before it. This court merely chooses to suspend, rather than dismiss, in order to avoid the time and expense of reinitiating litigation.

live and ongoing controversy before this court could have a chilling effect on candid negotiations between the parties and create an impasse before the district court. Neither party should succeed in using this Claims Court action as leverage in the district court. Thus, out of respect for the district court's desire to dispose of its pending litigation through the consent decree, this court shall suspend proceedings. The Court of Claims adopted precisely this course by suspending proceedings in *Hossein,* 218 Ct.Cl. at 727–28.

This court also shall suspend proceedings to facilitate judicial economy. A settlement at the district court may resolve all the issues before this court. Alternatively, the district court could decide to conduct a trial on its case. In any event, this court would waste judicial resources by conducting unnecessary litigation. After the district court resolves its pending matter, this court can best assess the most equitable and efficient method of proceeding.

Although this court has suspended all other proceedings, it does wish to explore *sua sponte* whether it has jurisdiction over plaintiff's eminent domain claim in light of the statute of limitations. Discussions during the oral argument led this court to believe that plaintiff may have failed to file a timely claim. To facilitate this court's inquiry, defendant shall file a brief on the statute of limitations issue on or before March 30, 1990. Plaintiff shall respond according to the RUSCC.

### CONCLUSION

The Tort Claims Act counterclaim in the Federal District Court for the Northern District of Georgia and the contract claim before the Claims Court involve the same set of operative facts. While they involve different legal theories, the two courts can grant the same relief for these related contentions. Consequently, pursuant to defendant's motion, this court dismisses plaintiff's breach of contract and Wherry Act claims pursuant to 28 U.S.C. § 1500.

Plaintiff filed fifth amendment claims in both courts. The district court, however, cannot grant the relief requested by plaintiff in the United States Claims Court as to its eminent domain cause of action. Thus, though the two actions involve the same set of operative facts, § 1500 does not demand dismissal of plaintiff's takings claim. This court therefore partially grants defendant's motion to dismiss.

However, recognizing the goals of judicial comity and economy, the court also suspends proceedings pending resolution of district court proceedings. The parties shall submit a joint status report on March 30, 1990, and every 30 days thereafter, apprising this court of the progress of the district court litigation.