**Valencia R. GRAY, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 05–483C.

United States Court of Federal Claims.

Dec. 6, 2005.

Christopher A. Zampogna, Zampogna, P.C., Washington, D.C., for plaintiff. With him on the briefs was Eduardo Pena, Jr., Pena & Associates, P.C., Washington, D.C.

Claudia Burke, Trial Attorney, Commercial Litigation Branch, Civil Division, United

States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. Of counsel was Richard G. Bergeron, Office of General Counsel, United States Department of Health and Human Services, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

Pending before the court are defendant's motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") and plaintiff's motion to transfer pursuant to 28 U.S.C. § 1631. The plaintiff, Ms. Gray, seeks compensatory and punitive damages from the United States for alleged injuries suffered while receiving medical treatment. Compl. at 1. Ms. Gray avers that she is aurally disabled and that a lack of accommodation for her disability affected her medical care. *Id.* Ms. Gray was treated at Unity Health Care, Inc. ("Unity"), a nonprofit, federally-financed network of health care centers operating in the District of Columbia that serves underprivileged communities and patients. *Id.* ¶ 2.

The government contends that this court does not have subject-matter jurisdiction to entertain Ms. Gray's claims. Defendant's Motion to Dismiss ("Def.'s Mot.") at 1. Plaintiff does not concede this court's lack of subject-matter jurisdiction. However, plaintiff chiefly addresses the merits of her claims in the context of her cross-motion to transfer those claims to the U.S. District Court for the District of Columbia ("District Court"). Ms. Gray's claims consist of alleged negligence, violation of the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101–12213, and violation of the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 701–796*l*. She seeks transfer to the District Court on the grounds that her claims

were timely filed, that she exhausted the pertinent administrative processes, and that the District Court would have jurisdiction to hear her claims. Plaintiff's Motion to Transfer and Response to Defendant's Motion to Dismiss ("Pl.'s Transfer Mot.") at 3–4. The government opposes transfer, arguing that Ms. Gray has failed to state any cognizable claim against the United States and thus that Ms. Gray's complaint also would be jurisdictionally deficient in the District Court. Defendant's Reply in Support of its Motion to Dismiss and Opposition to Motion to Transfer ("Def.'s Reply") at 1, 3–4. The government contends that the claims should be dismissed, not transferred. *Id.* at 4.

The court concludes that neither this court nor the District Court have jurisdiction to entertain plaintiff's claims against the United States based upon the ADA or the Rehabilitation Act. Those claims will be dismissed. However, while this court does not have jurisdiction to consider Ms. Gray's negligence claim, the District Court does have such jurisdiction, and that claim will accordingly be transferred to the District Court. In short, for the reasons stated below, defendant's motion to dismiss is granted with respect to counts one and two of the complaint, which rest on the ADA and the Rehabilitation Act, and plaintiff's motion to transfer is granted with respect to count three of the complaint (the negligence claim).

## BACKGROUND [1]

Ms. Gray, who avers she has been deaf since birth, alleges she has suffered from complications arising from, but not limited to, uterus fibroids and pelvic pain for at least the past four years. Compl. ¶ 9. Beginning in 2001 and continuing into 2002, Ms. Gray received medical care from the staff of Unity, who performed diagnostic procedures with attendant laboratory work on May 17, May 30, June 14, and September 17, 2001, and February 6, 2002. Hr'g Tr. 22:16–22, 23:12–17 (Nov. 10, 2005); *see* Compl. ¶ 10. Ms. Gray also received a pelvic sonogram and bilateral mammography at Providence Hospi-

1. The recitations that follow do not constitute findings of fact. Instead, the recitals are taken from the parties' submissions regarding their respective motions. The recited circumstances are undisputed except when a contrary indication is noted.

tal, which is unrelated to Unity, in June 2001. Compl. ¶ 11.

On March 14, 2002, the plaintiff was admitted to Columbia Hospital for Women ("Columbia") for surgery. Compl. ¶ 12. Columbia also is not affiliated with Unity. An exploratory laparotomy and total abdominal hysterectomy were performed on March 26, 2002 at Columbia by a surgeon, and Ms. Gray was subsequently released from Columbia three days later. *Id.* ¶ 12. The surgeon removed plaintiff's staples on April 3, 2002, prescribed medication, and noted that her postoperative recovery was "unremarkable." Hr'g Tr. 23:25 to 24:4; *see* Compl. ¶ 13.

Throughout Ms. Gray's treatment and interaction with Unity, Columbia, their employees, and the surgeon, Ms. Gray "at all times ... requested assistance from a live in-person, qualified sign language interpreter to enable [her] to communicate with doctors and other health care providers, to understand and participate in their medical treatment [of her] and to receive [the] full benefit of [h]ospital [s]ervices." Compl. ¶ 8. No interpretive services or other accommodations related to her inability to hear were provided to the plaintiff by Unity, Columbia, or the surgeon, including during pre– and post-operative meetings and exams. *Id.* ¶¶ 8, 14.

Subsequently, on April 4, 2002, Ms. Gray was admitted to Washington Medical Center, which is not affiliated with Unity, for exploratory surgery. Compl. ¶ 16. During this procedure, doctors discovered that Ms. Gray had an infection and a fascial dehiscence[2] as a result of the surgery performed by the surgeon at Columbia on March 26, 2002. *Id.* ¶¶ 15–16; Hr'g Tr. 24:22 to 25:12. Following the exploratory surgery, Ms. Gray remained at Washington Medical Center for seven days for further treatment. Compl. ¶ 17. While receiving treatment from the Washington Medical Center, Ms. Gray had, and continues to have, a sign language interpreter present when communicating with a doctor. *Id.*

Ms. Gray filed an administrative claim on March 6, 2004 pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), with the Department of Health and Human Services seeking $750,000 for alleged actions taken by Unity, Columbia, their employees, and the surgeon between March 1, 2001 and April 2002. Compl. Ex. A; Def.'s Mot. at 1. On October 21, 2004, a notice of final determination was issued stating that Ms. Gray's claim was denied on the ground that "[t]he evidence fail[ed] to establish that the alleged injury was due to the negligent or wrongful act or omission of a federal employee acting within the scope of employment." Compl. Ex. A. On April 20, 2005, Ms. Gray filed her complaint in this court.

Concurrently with the filing of this action, Ms. Gray also brought a complaint against Unity and Columbia in District Court alleging the same injuries arising from the same facts and circumstances. *Valencia R. Gray v. Unity Health Care, Inc., et al.,* No. 05–278ESH (D.D.C.2005). On August 12, 2005, Ms. Gray and Unity filed a stipulation voluntarily dismissing with prejudice the action against Unity pursuant to Fed.R.Civ.P. 41(a). *See* Stipulation of Dismissal, *Valencia R. Gray v. Unity Health Care, Inc., et al.,* No. 05–278ESH (D.D.C. Aug. 12, 2005). Ms. Gray's action against Columbia remains pending in the District Court. Pl.'s Transfer Mot. at 1.

The court held a hearing on both the United States' motion to dismiss and Ms. Gray's cross-motion to transfer on November 10, 2005. The disputed issues are now ready for decision.

## STANDARDS FOR DECISION

As a threshold matter, jurisdiction must be established before the court may proceed with the merits of a case. *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Ms. Gray, as the plaintiff, has the burden of establishing the court's subject-matter jurisdiction over her claims. *See McNutt v. General Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135

---

**2.** Fascial dehiscence is a premature bursting open or splitting of fibrous tissue along natural or surgical suture lines.

(1936); *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). The court must accept as true the facts asserted in the complaint and "draw all reasonable inferences in favor of the plaintiff" in determining whether jurisdiction exists in a particular case. *Goel v. United States*, 62 Fed.Cl. 804, 806 (2004) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995)); *see also Hamlet v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir.1989). If the undisputed facts in the complaint reveal any possible basis on which the plaintiff might prevail, the court must deny the motion. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

As a general matter, "[a]ll federal courts are courts of limited jurisdiction," *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed.Cir.1998), and this court is no exception. Congress must have consented to be sued through a waiver of sovereign immunity for this court to have jurisdiction over a claim brought against the United States. *See United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472, 123 S.Ct. 1126, 155 L.Ed.2d 40 (2003); *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). A waiver of sovereign immunity must be explicit and cannot be implied. *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). "Moreover, a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (citing *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)). The Tucker Act constitutes explicit consent to suit for claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act alone, however, is insufficient to confer jurisdiction. The plaintiff must also identify a substantive right enforceable against the United States for money damages. *Mitchell*, 463 U.S. at 216–17, 103 S.Ct. 2961; *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

If a court lacks jurisdiction to decide the merits of a case, dismissal is required as a matter of law. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868); *Thoen v. United States*, 765 F.2d 1110, 1116 (Fed.Cir.1985). However, a federal court that does not have jurisdiction over a case may transfer the action to another federal court that does have jurisdiction, if transfer is in the interest of justice. *See* 28 U.S.C. § 1631; *Telcomm Tech. Servs., Inc. v. Siemens Rolm Communications, Inc.*, 295 F.3d 1249, 1252 (Fed.Cir.2002); *cf. Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818–19, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Pursuant to 28 U.S.C. § 1631, three factors must be present for a court to transfer a case: "(1) the transferor court lacks ... jurisdiction; (2) at [the] time the case was filed, it could have been brought in the transferee court; and (3) such transfer is in the interest of justice." *Skillo v. United States*, 68 Fed.Cl. 734, 744, 2005 WL 3216932, at *9 (Nov. 30, 2005) (citing *Rodriguez v. United States*, 862 F.2d 1558, 1559–60 (Fed.Cir. 1988)).[3]

## ANALYSIS

### A. Federal Tort Claims Act

■ The FTCA "is a limited waiver of [the United States'] sovereign immunity, making

---

**3.** The transfer statute states:

> Whenever a civil action is filed in a court as defined in section 610 of this title [28] or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

> 28 U.S.C. § 1631.

the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976); *see GAF Corp. v. United States,* 818 F.2d 901, 903 (D.C.Cir.1987); 28 U.S.C. § 1346. Specifically, the FTCA provides that:

> the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). The FTCA focuses on injuries caused by "employee[s]" of the United States "while acting within the scope of [their] office or employment." *Id.* It was never intended "to reach employees or agents of all federally funded programs that confer benefits on people." *Orleans,* 425 U.S. at 813, 96 S.Ct. 1971. As defined by the statute, an "[e]mployee of the Government" includes "officers or employees of any federal agency, members of the military . . ., members of the National Guard while engaged in training or [certain] duty . . ., and persons acting on behalf of a federal agency in an official capacity," as well as "any officer or employee of a federal public defender organization." 28 U.S.C. § 2671. For this purpose, a "[f]ederal agency" includes only executive and military departments, the judicial and legislative branches, "independent establishments of the United States, and corporations acting as instrumentalities or agencies

of the United States." *Id.* The definitional statute expressly provides that a government contractor is not considered a federal agency under the FTCA. *Id.*

These broadly applicable defining provisions in the FTCA have been modified in the context presented by this case, however. The Federally Supported Health Centers Assistance Act of 1992 ("FSHCAA of 1992"), Pub.L. No. 102–501, § 2, 106 Stat. 3268, 3268 (1992), amended Section 224 of the Public Health Service Act, formerly Section 223, as added by Pub.L. No. 91–623, § 4, 84 Stat. 1870 (codified, as amended, at 42 U.S.C. § 233), to provide coverage under the FTCA for medical malpractice for certain health centers. *See* 42 U.S.C. § 233(g); *see also* Federally Supported Health Centers Assistance Act of 1995, Pub.L. No. 104–73, 109 Stat. 777 (1995) (removing the expiration date of December 31, 1995 for medical liability coverage under the FSHCAA of 1992). A "health center," under the amended Public Health Service Act, is "an entity that serves a population that is medically underserved, or a special medically underserved population comprised of migratory and seasonal agricultural workers, the homeless, and residents of public housing, by providing . . . required primary health services . . . for all residents of the area served by the center." 42 U.S.C. § 254b(a)(1) (2005); *see also* 42 U.S.C. § 233(g)(4) (2005). The FSHCAA of 1992 addressed the liability for medical malpractice not only of a health center but also of a health care physician or licensed or certified practitioner recognized as part of the Public Health Service pursuant to 42 U.S.C. § 254b(a)(1) and acting within the scope of their employment. For such liability, the FSHCAA provided that the exclusive remedy for a plaintiff would be against the United States under the FTCA. 42 U.S.C. § 233(g).[4]

---

**4.** 42 U.S.C. § 233(g)(1)(A) states:

> For purposes of this section and subject to the approval by the Secretary of an application under subparagraph (D), an entity described in paragraph (4), and any officer, governing board member, or employee of such an entity, and any contractor of such an entity who is a physician or other licensed or certified health care practitioner . . . shall be deemed to be an employee of the Public

Health Service for a calendar year . . . . *The remedy against the United States* for an entity described in paragraph (4) and any officer, governing board member, employee, or contractor . . . of such an entity who is deemed to be an employee of the Public Health Service pursuant to this paragraph *shall be exclusive of any other civil action or proceeding* to the same extent as the remedy against the

To be protected by the FTCA from liability for medical malpractice, a health center or an employee of such a center must be "deemed" an employee of the Public Health Service by the Secretary of Health and Human Services. 42 U.S.C. § 233(f), (g)(1); *see Allen v. Christenberry*, 327 F.3d 1290, 1294–95 (11th Cir. 2003) (holding that removal of suit against physicians employed by a federally funded community health center to federal court by the defendants on the ground that they were covered under the Public Health Service Act was improper, as the Department of Health and Human Services had not yet made a determination whether defendants should be deemed to be employees).

· Under the traditional formulation of the FTCA, Unity is not a federal agency, nor has it been certified as such by the Attorney General. *See* 28 U.S.C. §§ 2671, 2679(d). In this case, however, the government has conceded that pursuant to Section 233 of the Public Health Service Act, Unity is "considered the federal government for purposes of the FTCA." Hr'g Tr. 7:9–23, 13:1–6, 40:3–7; *see* 42 U.S.C. § 233(g). Therefore, the court considers Unity to be an "employee" of the Public Health Service under the FSHCAA, and consequently the FTCA. *See* 42 U.S.C. § 233(g)(1)(F); *see also Allen*, 327 F.3d at 1294–95.

"The district courts ... shall have exclusive jurisdiction" for all claims filed under the FTCA. 28 U.S.C. § 1346(b)(1); *accord Martinez v. United States*, 26 Cl.Ct. 1471, 1476 (1992) (finding that the Claims Court did have not have subject-matter jurisdiction to entertain plaintiff's claims based upon the FTCA). Thus, this court holds that it does not have subject matter jurisdiction over the negligence claim asserted by Ms. Gray.

Nonetheless, pursuant to the FSHCAA and FTCA, the District Court would have possessed jurisdiction over the negligence claim if it had been brought in the District Court at the time it was filed in this court. *See* 42 U.S.C. § 233(g); 28 U.S.C. § 1631. Ms. Gray's complaint alleges that during her pre– and post-operative treatment, Unity and its staff breached their duty of care due to their negligent and wrongful acts and that they caused her to suffer physical and emotional injury. Compl. ¶¶ 15–17, 26–28, 31, 45. Moreover, if this court were to dismiss the negligence claim, Ms. Gray would be unable to re-file the matter in District Court because the six-month limitation period has long expired within which she had to file suit against the United States after a final determination was mailed denying her administrative claim. Ms. Gray's complaint was filed in this court on April 20, 2005. The notice denying her administrative claim was mailed on October 21, 2004. *See* Compl. Ex. A (Letter from Richard Bergeron to Christopher Zampogna (Oct. 21, 2004) (denying administrative claim)). Section 2401(b) of Title 28 provides that "[a] tort claim against the United States shall be forever barred ... unless action is begun within six months after the date of mailing ... of notice of final denial of the claim by the agency to which it was presented." Thus, Ms. Gray's complaint was filed in this court barely within the time provided by Section 2401(b), and any new complaint she might file in District Court would be far out of time.

" 'A compelling reason to transfer is that the [plaintiff], whose case if transferred is for statute of limitations purposes deemed by section 1631 [of Title 28] to have been filed in the transferor court ... will be time-barred if his case is dismissed and thus has to be filed anew in the right court.' " *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1374 (Fed.Cir.2005) (quoting *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir.1999)); *see also Ayres v. United States*, 67 Fed.Cl. 776, 781–82 (2005). Therefore, it would be in the interest of justice to transfer the negligence claim to the District Court rather than to dismiss that claim. *See Thrustmaster of Texas, Inc. v. United States*, 59 Fed.Cl. 672, 674 (2004).

Accordingly, the court will direct that Ms. Gray's negligence claim be transferred to the District Court pursuant to 28 U.S.C. § 1631.

### B. Americans with Disabilities Act

■ The ADA encompasses three general areas of activity: employment (Title I), pub-

---

United States is exclusive pursuant to subsection (a) of this section [233].

(emphasis added); *see also id.* § 233(a).

lic services (Title II), and public accommodations and services operated by private entities (Title III). Pub.L. No. 101–336, 104 Stat. 327 (1990). Under Title II of the statute, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title III of the ADA similarly bars discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Ms. Gray alleges that the United States, through the actions of Unity and its employees, violated the ADA by failing to provide her with an accommodation for her hearing impairment notwithstanding her repeated requests. Compl. ¶ 18–31. Based upon her averments, Ms. Gray qualifies for having a disability under the ADA because she has a "physical ... impairment that substantially limits one or more of the major life activities." 42 U.S.C. § 12102(2)(A). She styles her claim as a violation of the public accommodations provisions in Title III of the ADA. Compl. ¶ 20–29 (citing Section 302 of the ADA).[5]

Under Title III, discrimination includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii). An auxiliary aid or service includes "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." Id. § 12102(1)(A). Furthermore, hospitals and other service establishments are considered "public accommodations" under Title III and thus bound by the ADA's prohibitions. Id. § 12181(7)(F).

Even if the court, arguendo, were to find that Ms. Gray does have a disability, that she was denied an auxiliary service such that she suffered discrimination, and that the health care center that inflicted the discrimination, Unity, was and is a public accommodation, neither this court nor the District Court would have subject-matter jurisdiction to entertain the plaintiff's claim. Although the FSHCAA imports into the FTCA a private cause of action against the United States for medical malpractice by certain health care centers, 42 U.S.C. § 233(g), there is no such comparable importation into the ADA. Under Title III, on which the plaintiff in this case bases her claim, no method exists by which a party may file suit against the federal government in a private cause of action for a violation of the terms of the ADA. See 42 U.S.C. §§ 12181–12189. Instructively, the caption of Title III denotes that Title II covers *"Public Accommodations* And Services *Operated By Private Entities." Id.* (caption) (emphasis added). For purposes of the ADA, Unity is a private entity, and the federal government may not be sued in the place and stead of Unity.

Ms. Gray has failed in her burden to establish that this or any other court has subject-matter jurisdiction to decide the merits of her claim against the United States under the ADA. In such cases, "[i]f the District Court most probably would lack, or find a lack of jurisdiction over the [claim,] then the [claim] should not be transferred ... since it would not serve the interests of justice to do so." *Jackson v. United States,* 10 Cl.Ct. 691, 695 (1986) (quoting *Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985)); *see also Billops v. Department of the Air Force,* 725 F.2d 1160, 1164 (8th Cir.1984)

---

5. If Ms. Gray had sought relief against the United States under Title II of the ADA, the more traditional means by which parties file suit based upon discrimination by a "public entity," 42 U.S.C. § 12132, arguably no court would have been able to exercise subject-matter jurisdiction over the matter. Under Section 201 of the ADA, the federal government is not included within the definition of a public entity. 42 U.S.C. § 12131(1) (defining a "public entity" as any state or local government, instrumentality thereof, or the National Railroad Passenger Corporation); *see Cellular Phone Taskforce, et al. v. Federal Commc'ns Comm'n,* 217 F.3d 72, 73 (2d Cir. 2000) (holding that "Title II of the ADA is not applicable to the federal government.").

(transfer of case from federal district court to Federal Circuit was not appropriate where Federal Circuit would not have jurisdiction to consider the merits of the claim). "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *Mitchell*, 463 U.S. at 212, 103 S.Ct. 2961. As the United States has not waived its sovereign immunity to be sued under the ADA in the manner plaintiff seeks, this court has no alternative but to dismiss plaintiff's ADA claim. *See Whooten v. Bussanich*, 2005 WL 2130016, at *7 (M.D.Pa. Sept. 2, 2005) (holding that the "ADA does not contain a waiver of sovereign immunity and thus, does not apply to the federal government.").

### C. Rehabilitation Act

■ Ms. Gray's final claim is that the United States, through the actions of Unity, violated Section 504 of the Rehabilitation Act, Pub.L. No. 93–112, § 504, 87 Stat. 355 (1973) (codified at 29 U.S.C. § 794(a)), because Unity "refuse[d] to ensure effective communication with [the p]laintiff[ ]" during her medical treatment despite her repeated requests for a sign language interpreter. Compl ¶¶ 8, 32–41; *see* 29 U.S.C. § 794(a) (2005). The United States responds that neither this court nor the District Court have jurisdiction over such a claim because the federal government has not waived its immunity for such a claim. Def.'s Mot. at 7.

Under Section 504 of the Rehabilitation Act, an "otherwise qualified individual with a disability" may not be "denied the benefits of," or "subjected to discrimination under any program or activity receiving Federal financial assistance" or conducted by an Executive agency. 29 U.S.C. § 794(a).[6] The "remedies, procedures and rights" of Title VI of the Civil Rights Act of 1964, Pub.L. No. 88–352, §§ 601–606, 78 Stat. 241 (1964) (codi-

fied, as amended, at 42 U.S.C. §§ 2000d–2000d–4a), are available to any individual who is "aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under" Section 504 of the Rehabilitation Act. 29 U.S.C. § 794a(a)(2) (2005).[7]

In *Lane v. Pena*, the Supreme Court resolved a disagreement amongst the circuits as to "whether Congress ha[d] waived the Federal Government's sovereign immunity against awards of monetary damages for violations of" Section 504(a) of the Rehabilitation Act, 29 U.S.C. § 794(a). *Lane*, 518 U.S. at 189, 116 S.Ct. 2092. In *Lane*, the Court addressed whether a cadet at the Merchant Marine Academy could seek money damages against the United States under the Rehabilitation Act for his termination on the ground that his diabetes rendered him ineligible to be commissioned for service. *Id.* at 189–90, 116 S.Ct. 2092. The Court noted that Congress explicitly made compensatory damages available for certain violations of Section 501 of the Rehabilitation Act, which protects individuals with disabilities who are subjected to discrimination in employment settings. *Lane*, 518 U.S. at 193, 116 S.Ct. 2092. However, "[i]n light of [the Court's] established practice of construing waivers of sovereign immunity narrowly in favor of the sovereign," the Court held that the Federal Government had *not* waived its immunity against monetary damages for violations of Section 504(a). *Id.* at 195, 116 S.Ct. 2092. Based on the Supreme Court's decision in *Lane*, this court does not have subject-matter jurisdiction over Ms. Gray's claim. *See Golding v. United States*, 48 Fed.Cl. 697, 723 (2001) (relying on *Lane* to dismiss for lack of jurisdiction a claim under the Rehabilitation Act). *Lane* also bars the District Court from awarding monetary damages against the

---

**6.** The statute states, in relevant part:
No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title [29], shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive

agency or by the United States Postal Service.
29 U.S.C. § 794(a).

**7.** Title VI of the Civil Rights Act of 1964 prohibits the denial of benefits of, and discrimination from, any program or activity receiving federal financial assistance on the basis of race, color, or national origin. 42 U.S.C. § 2000d.

United States under the Rehabilitation Act. Because Ms. Gray seeks only monetary damages in her complaint, her claim based upon the Rehabilitation Act is not susceptible to transfer under 28 U.S.C. § 1631 and must therefore be dismissed.

## CONCLUSION

For the reasons stated, the government's motion to dismiss is GRANTED IN PART and DENIED IN PART, and the plaintiff's motion to transfer is also GRANTED IN PART and DENIED IN PART. Plaintiff's claims with respect to the Americans with Disabilities Act and Rehabilitation Act are hereby dismissed for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1). Plaintiff's claim based upon negligence under the Federal Tort Claims Act is hereby transferred to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1631. The Clerk is directed to enter judgment dismissing counts one and two of the plaintiff's complaint for lack of jurisdiction, and transferring count three of the plaintiff's complaint to the U.S. District Court for the District of Columbia.

IT IS SO ORDERED.