Padraig TARRANT, Plaintiff,

v.

UNITED STATES, Defendant.

No. 04–149C.

United States Court of Federal Claims.

June 13, 2006.

Padraig Tarrant, pro se, Newark, NJ.

Nancy M. Kim, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Peter D. Keisler, Assistant Attorney General, Civil Division, David M. Cohen, Director, and Deborah A. Bynum, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

In this action, plaintiff, Mr. Tarrant, seeks monetary damages for alleged mishandling and improper disposition by the Environmental Protection Agency ("EPA") of property he owned that was located at a manufacturing facility in East Rutherford, New Jersey. The facility was subject to a removal action under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601–9675 ("CERCLA"), and EPA's improper actions allegedly occurred during the course of its performance of the removal action.

The government has responded by moving to dismiss Mr. Tarrant's suit for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). The court held a hearing on the motion to dismiss on May 11, 2006. For the reasons set out below, that motion is denied even though the court lacks jurisdiction over Mr. Tarrant's claims. The court orders that this action be transferred to the District Court for the District of New Jersey pursuant to 28 U.S.C. § 1631.

---

1. The recitations that follow do not constitute findings of fact by the court. Rather, the recited factual circumstances are drawn from the Plaintiffs' Amended Complaint ("Am.Compl.") and the

## BACKGROUND [1]

A commercial enterprise conducted by Mr. Tarrant, MPF Plating and Finishing, conducted plating operations at the East Rutherford facility during 1996 and 1997. Def.'s App. at 26–28 (Mem. from Thomas Brady, Supervising Environmental Compliance Investigator, New Jersey Department of Environmental Protection, to Marlen Dooley, Assistant Commissioner Compliance and Enforcement (Apr. 13, 1998)). EPA examined the site from September 9 to 21, 1998 and found thousands of gallons of allegedly hazardous materials. Id. at 32–42 (Mem. from Paul L. Kahn, On–Scene Coordinator, EPA, to Richard L. Caspe, EPA (Nov. 17, 1998)). The resulting EPA report determined that the materials at the facility "may present an imminent and substantial endangerment to public health, or welfare or the environment" through actual or threatened release of toxic substances. Id. at 39. EPA's determinations caused the agency to institute a removal action under the National Oil and Hazardous Substance Pollution Contingency Plan ("NCP"), 40 C.F.R. § 300.415(b)(2). See id. at 39–42.

EPA conducted its removal activities at the site from December 8, 1998 to June 15, 1999. Def.'s App. at 46 (EPA Pollution Report No. 1 (Dec. 17, 1998)), 77 (EPA Pollution Report No. 20 (June 16, 1999)). Thereafter, EPA by letter demanded reimbursement from Mr. Tarrant for its removal measures. Id. at 86–87 (Letter from EPA, Region 2, to Padraig Tarrant (Apr. 12, 2000)). When Mr. Tarrant failed to make the payment that was demanded, EPA sued him and a business associate, Cathy Chatterton, in the District Court for the District of New Jersey ("district court") to recover its removal costs. Complaint, United States v. Tarrant, et al., No. 03CV3899 (JCL) (Aug. 15, 2003); Def.'s App. at 92–99. In that action, on September 22, 2003, Mr. Tarrant submitted a letter that purportedly set out a counterclaim requesting compensatory and punitive damages for governmental actions. Mr. Tarrant averred that EPA allegedly (1) "aid[ed] the property

Appendix to Defendant's Motion to Dismiss ("Def.'s App.") and are either undisputed or are alleged and assumed to be true for purposes of the pending motion.

owner" by allowing the owner to sell equipment and other property belonging to Mr. Tarrant and to keep the proceeds and (2) "decommission[ed] the plant and remov[ed] valuable and useable plating materials under the misnomer of calling them hazardous waste." Def.'s App. at 100–01 (Letter from Tarrant to Clerk, district court (Sept. 22, 2003)). In the action in the district court, the government argued that if Mr. Tarrant were alleging a takings claim, the district court did not have jurisdiction but this court did. Hr'g Tr. 8:10–16, 15:17–20 (May 11, 2006). Subsequently, on February 4, 2004, Mr. Tarrant filed his complaint with this court requesting damages for actions taken by EPA during its removal activities undertaken pursuant to CERCLA. The government responded by moving for a more definite statement under RCFC 12(e), which motion the court granted. Order of Nov. 22, 2004. An amended complaint was filed on November 29, 2005, and the government thereafter filed a motion to dismiss. A hearing was held on May 11, 2006, and the matter is now ready for disposition.

## ANALYSIS

### A. *Jurisdiction*

Jurisdiction must be established before a court addresses the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 88–89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); *see Hambsch v. United States*, 857 F.2d 763, 764 (Fed.Cir.1988) (holding that a federal court is obliged to determine its own jurisdiction for each case). Mr. Tarrant, as the plaintiff, bears the burden of establishing the court's subject matter jurisdiction over his claims by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988); *see McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). When ruling on its subject matter jurisdiction over a case, a court must accept as true all undisputed facts asserted in plaintiff's complaint and "draw all reasonable inferences in favor of plaintiff." *Goel v. United States*, 62 Fed.Cl. 804, 806 (2004) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995)); *see also Ham-let v. United States*, 873 F.2d 1414, 1415–16 (Fed.Cir.1989).

■ The Tucker Act assigns jurisdiction to the Court of Federal Claims over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This court's generally applicable jurisdiction under the Tucker Act can be displaced by an explicit jurisdictional grant to another federal court or an express jurisdictional limitation. *See, e.g., Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1373–74 (Fed.Cir.2005) (holding that specific jurisdictional provisions of Subsections 506(d) and 508(j) of the Federal Crop Insurance Act, codified at 7 U.S.C. §§ 1506(d), 1508(j), superseded Tucker Act jurisdiction); *Williams v. United States*, 71 Fed.Cl. 194, 196–97, 2006 WL 1084002, at *3 (April 25, 2006) (collecting authorities).

■ CERCLA assigns exclusive original jurisdiction for certain claims arising under that Act to federal district courts. 42 U.S.C. § 9613(b) ("Except as provided in subsections (a) and (h) of this section, the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter, without regard to the citizenship of the parties or the amount in controversy."). The exceptions appearing at Subsections (a) and (h) of Section 9613 pertain to review of EPA's actions in promulgating rules, respecting which review is assigned to the U.S. Court of Appeals for the D.C. Circuit, *id.* § 9613(a), and to specifically enumerated actions under Sections 9606, 9607, and 9659 of CERCLA, as to which jurisdiction is variously assigned to district courts. *Id.* § 9613(h). In short, the jurisdictional provisions of CERCLA contain a complete and exclusive assignment of original jurisdiction to district courts and to the U.S. Court of Appeals for the D.C. Circuit to hear disputes arising under the Act. This court's generally applicable jurisdictional power to hear monetary claims against the government thus is displaced by the specific and

exclusive grants in CERCLA of jurisdiction to other courts. *See American Lifestyle Homes, Inc. v. United States,* 17 Cl.Ct. 711, 715–16 (1989) (retransferring to a district court an action presenting claims solely arising under CERCLA). To the extent that Mr. Tarrant's claim in this court rests on actions taken by EPA under CERCLA, jurisdiction is therefore lacking.

The pertinent jurisdictional question consequently becomes whether Mr. Tarrant has alleged claims that arise under CERCLA or whether his claims have another constitutional, statutory, or regulatory foundation. Mr. Tarrant elaborated the basis for his claims in the amended complaint filed by him in response to this court's order granting the government's motion for a more definite statement. That amended complaint focuses entirely upon EPA's removal action conducted at the East Rutherford facility. Mr. Tarrant alleges that he owned equipment and chemicals at the facility, Am. Compl. ¶ 3, and that as part of the removal action, EPA "dismantl[ed] valuable equipment and remov[ed] useful chemicals." *Id.* ¶ 5. The equipment "dismantled and rendered useless by EPA" allegedly included three Udylite plating lines, said to be valued at $1.2 million each, a complete wastewater treatment plant, a new stainless steel stripping system, and various items of polishing and vibratory equipment. *Id.* ¶ 8. EPA's actions allegedly "exceeded it[ ]s authority [under] CERCLA" and were inconsistent with the NCP. *Id.* ¶ 9.[2]

■ Certain claims alleged by Mr. Tarrant in his amended complaint may sound in tort rather than arise under CERCLA. He avers, for example, that EPA's dismantling of equipment was not necessary for the removal action and was done in such a way that equipment was destroyed. Am. Compl. ¶¶ 4–8. These averments mesh with Mr. Tarrant's allegations that EPA's actions exceed-

ed its authority under CERCLA and were inconsistent with the NCP. *Id.* ¶ 9. As framed by Mr. Tarrant, the averments may constitute

claims against the United States, for money damages, . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (Federal Tort Claims Act).

To the extent that Mr. Tarrant does raise claims under the Federal Tort Claims Act, this court would not have jurisdiction to hear them. The "Federal Tort Claims Act . . . , 28 U.S.C. § 1346(b)(1), waives sovereign immunity as to claims arising in tort" and grants federal district courts exclusive jurisdiction to hear suits against the federal government for such claims. *Awad v. United States,* 301 F.3d 1367, 1372 (Fed.Cir.2002); *Wood v. United States,* 961 F.2d 195, 197 (Fed.Cir. 1992). Jurisdiction over Mr. Tarrant's tort claims thus also belongs in a district court rather than in this court.

■ The only allegation in the amended complaint that is not explicitly tied to EPA's actions under CERCLA relates to private persons or entities, not the government. Mr. Tarrant alleges that "[w]hatever was not destroyed or removed by EPA in the name of the 'removal action' . . . was left for the landlords who thereafter seized [p]laintiff's property and then sold [p]laintiff's property for a considerable sum." Am. Compl. ¶ 5. Claims against private persons or entities are not actionable in this court, *see Brown v. United States,* 105 F.3d 621, 624 (Fed.Cir. 1997); *Shewfelt v. United States,* 104 F.3d

---

**2.** Removal actions may be undertaken under CERCLA "[w]henever (A) any hazardous substance is released or there is a substantial threat of such a release into the environment, or (B) there is a release or substantial threat of release into the environment of any pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604(a)(1). Removal and other re-

medial measures must be "consistent with the national contingency plan." *Id.* A person who owned or operated a facility at the time of disposal of hazardous substances is liable for "all costs of removal or remedial action incurred by the United States . . . not inconsistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(A).

1333, 1337–38 (Fed.Cir.1997), except with relation to setoffs and counterclaims made by the government. *See* 28 U.S.C. §§ 1503, 2508; *Cherry Cotton Mills v. United States,* 327 U.S. 536, 539, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946).[3]

As a consequence, Mr. Tarrant has alleged no claims against the government that are cognizable in this court.[4]

### B. Transfer to Cure Want of Jurisdiction

■ A federal court may transfer a claim over which it lacks jurisdiction to another federal court in which the claim could have been originally filed, if transferral serves the "interest of justice." 28 U.S.C. § 1631; *see Telcomm Tech. Servs., Inc. v. Siemens Rolm Commc'ns, Inc.,* 295 F.3d 1249, 1252 (Fed.Cir.2002); *cf. Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 818–19, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). Transfer under Section 1631 is appropriate if "(1) the transferor court lacks ... jurisdiction; (2) at [the] time the case was filed, it could have been brought in the transferee court; and (3) such transfer is in the interest of justice." *Gray v. United States,* 69 Fed.Cl. 95, 98 (2005) (internal quotation marks omitted).

■ These conditions for transfer have been satisfied. This court lacks subject mat-

ter jurisdiction over Mr. Tarrant's amended complaint because all of his claims arise under either CERCLA or the Federal Tort Claims Act, and Mr. Tarrant could have brought these claims initially in the District Court for the District of New Jersey. Transfer is in the interest of justice in large part because counsel for the government contended that Mr. Tarrant should file his claims in this court. Hr'g Tr. 8:10–16. That contention may have been based upon the misapprehension that Mr. Tarrant was asserting a takings claim rather than claims under CERCLA and the Federal Tort Claims Act. *Id.* Nonetheless, the result was that Mr. Tarrant mistakenly filed his complaint in this court even though he preferred to be heard in the district court. Hr'g Tr. 16:9–12 ("The Court: So you actually would favor a transfer of this case back to New Jersey. Mr. Tarrant: I absolutely would. That's where I tried to file it in the first place."). Transfer accordingly is appropriate.

### CONCLUSION

For the reasons stated, defendant's motion to dismiss is DENIED, and the Clerk shall transfer this case to the United States Dis-

---

**3.** Contrary to the suggestion made by the government's counsel in the district court, Hr'g Tr. 8:10–13, 15:15–20, Mr. Tarrant's amended complaint neither explicitly nor impliedly puts forward a takings claim under the Fifth Amendment. This court, not the district court, would have jurisdiction over such a claim.

**4.** The government also invokes 28 U.S.C. § 1500 as a ground for dismissal of Mr. Tarrant's claims. That statute provides in pertinent part that this court "shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. The government contends that Mr. Tarrant's letter dated September 22, 2003, submitted to the district court as a counterclaim, Def.'s App. 100–01, in essence replicates his original complaint in this action and thus triggers the bar of Section 1500. Def.'s Mot. at 7 (citing *Frantz Equip. Co. v. United States,* 120 Ct.Cl. 312, 98 F.Supp. 579, 580 (1951); *Webb & Assocs., Inc. v. United States,* 19 Cl.Ct. 650, 653 (1990)). This ground for dismissal is problematic. The status of the proffered counterclaim in the district court

is uncertain, as it was at the time of the filing of Mr. Tarrant's original complaint in this court. Hr'g Tr. 15:15 to 16:4; *see Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1548 (Fed. Cir.1994) (*en banc*) ("The question of whether another claim is 'pending' for purposes of § 1500 is determined at the time at which the suit in the Court of Federal Claims is filed."). Moreover, Mr. Tarrant's amended complaint, filed as a consequence of this court's grant of the government's motion for a more definite statement, sets out allegations of fact and claims that do not appear in the original complaint. "For the Court of [Federal] Claims to be precluded from hearing a claim under § 1500, the claim pending in another court must arise from *the same operative facts,* and must seek *the same relief." Loveladies,* 27 F.3d at 1551 (emphasis in original); *see also Williams,* 71 Fed.Cl. at 198–201, 2006 WL 1084002, at *4–6. In this instance, it is unnecessary to " '[d]ecid[e] if the claims are the same or distinctly different,' " *Harbuck v. United States,* 378 F.3d 1324, 1328 (Fed.Cir.2004) (quoting *Loveladies,* 27 F.3d at 1549), because jurisdiction in this court under the Tucker Act is precluded by the jurisdictional provisions of CERCLA and of the Federal Tort Claims Act.

trict Court for the District of New Jersey pursuant to 28 U.S.C. § 1631.

IT IS SO ORDERED.